**Raymond GALLEGOS, Claimant–Appellee,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellant.**

**No. 01–7037.**

United States Court of Appeals, Federal Circuit.

DECIDED: March 15, 2002.

James W. Stanley, Jr., of North Little Rock, AR, Attorney, argued for claimant-appellant.

Lawrence N. Minch, Attorney, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Todd M. Hughes, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel; and Martie Adelman, Attorney, Department of Veterans Affairs, of Washington, DC.

Kenneth M. Carpenter, NOVA—National Organization of Veterans' Advocates, Inc., of Topeka, KS, for amicus curiae NOVA, INC.

Before LOURIE, RADER, and GAJARSA, Circuit Judges.

RADER, Circuit Judge.

The Court of Appeals for Veterans Claims determined that 38 C.F.R. § 20.201 (1998)—a Department of Veterans Affairs (VA) regulation setting minimum requirements for a notice of disagreement (NOD)—was invalid because the regulation required that an NOD express a desire for review by the Board of Veterans' Appeals (Board). After invalidating the regulation, the Court of Appeals for Veterans Claims held that a letter submitted by Raymond Gallegos's authorized representative to a regional office was a valid NOD even without any expression of a desire for review by the Board. Because the Court of Appeals for Veterans Claims did not properly defer under *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), and because 38 C.F.R. § 20.201 is not procedurally defective, arbitrary or capricious in substance, or manifestly contrary to statute, this court reverses and remands.

I.

In March 1992, Raymond Gallegos applied for service connection for disability due to diabetes and chloracne (acne-like eruptions on the face, linked to dioxin exposure). In August 1993, Mr. Gallegos amended his claim to include a claim for service connection for Post Traumatic Stress Disorder (PTSD). In September 1994, the regional office (RO) denied his PTSD claim. Mr. Gallegos's representative, the Disabled American Veterans (DAV), submitted a letter entitled "Memo to Rating Board" to the VA on October 11, 1994. This 1994 DAV letter stated: "[I]t is our opinion that denial of the veteran's claim for [PTSD] was a little bit premature. Further development [i.e., a review of other documents] ... would prove beneficial to fair evaluation of this veteran's claim." The record does not indicate what action the VA took in response to that letter.

Mr. Gallegos took no further action on his claim until February 20, 1997, when he filed an application to reopen his disallowed claim for service connection for PTSD. In October 1997, the RO granted that claim effective February 20, 1997, the date of Mr. Gallegos' application to reopen the claim. Soon after, Mr. Gallegos filed an NOD disagreeing with the 1997 effective date. In that NOD, Mr. Gallegos sought an effective date of August 31, 1993, the date on which he first claimed service connection for PTSD.

In December 1998, the Board held that Mr. Gallegos was not entitled to the earlier effective date. *In re Gallegos*, C 25 623 426, slip op. at 9 (Dec. 9, 1998). Applying 38 C.F.R. § 20.201, the Board reasoned that the 1994 DAV letter—although perhaps questioning the RO's denial of PTSD—did not "indicate the appellant's

desire for appellate review." *Id.* at 8. Thus, the Board concluded that the 1994 DAV letter did not constitute a valid NOD appealing the September 1994 denial of the original PTSD claim. Because Mr. Gallegos did not submit a valid NOD in 1994, the Board made the September 1994 decision final. As a consequence, the Board sustained the effective date of February 20, 1997 for Mr. Gallegos' PTSD benefits.

The Court of Appeals for Veterans Claims reversed the Board's decision. Specifically, the Court of Appeals for Veterans Claims determined that 38 U.S.C. § 7105, the statutory NOD requirement, needed no interpretation or implementation by regulation. *Gallegos v. Gober,* 14 Vet.App. 50, 56 (2000). Thus, the Court of Appeals for Veterans Claims declined to apply *Chevron* deference to the VA's regulatory implementation of the statute, namely 38 C.F.R. § 20.201. Relying on the language of § 7105, the prior decision of *Tomlin v. Brown,* 5 Vet.App. 355 (1993), and the pro-claimant nature of the veteran adjudication system, the veterans court struck from § 20.201 the requirement that an NOD express "a desire for appellate review." The Secretary of Veterans Affairs now appeals.

## II.

██ When reviewing an agency's construction of a statute that it administers, this court first determines "whether Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778. If the law governs the question under consideration, this court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. 2778. If, however, the law does not speak to the

issue, this court then asks whether the administering agency properly promulgated an interpretative regulation "based on a permissible construction of the statute." *Id.; Micron Tech., Inc. v. United States,* 243 F.3d 1301, 1308 (Fed.Cir.2001).

██ In other words, this court defers to the VA's reasonable interpretation of a statutory provision when the law does not directly address the precise question at issue, in other words, when the law leaves "a gap for an agency to fill." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 ("The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules *to fill any gap left, implicitly or explicitly, by Congress.*" (quoting *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974)) (emphasis added)); *see also Immigration & Naturalization Serv. v. Aguirre–Aguirre,* 526 U.S. 415, 424, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999). The Supreme Court chose to emphasize that *Chevron* deference applies unless the statute speaks "directly" "to the precise question." Under *Chevron* deference, "any ensuing [agency] regulation is binding in the Courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001).

## III.

██ Under 38 U.S.C. § 501, "[t]he Secretary has authority to prescribe all rules and regulations which are *necessary or appropriate* to carry out the laws administered by the Department and are consistent with those laws." 38 U.S.C. § 501

(1994) (emphasis added). The Secretary of Veterans Affairs asserts that the VA properly interpreted and implemented 38 U.S.C. § 7105 by promulgating 38 C.F.R. § 20.201. Specifically, the Secretary notes that title 38 does not define a "notice of disagreement." The Secretary's regulation seeks to define that undefined statutory term. In other words, the Secretary seeks to fill a gap in the statute.

Section 7105(a) states that: "Appellate review will be initiated by a notice of disagreement and completed by a substantive appeal...." Section 7105(b) further states, in relevant part:

(1) [A] notice of disagreement *shall be filed within one year* from the date of mailing of notice of the result of initial review or determination. Such notice, and appeals, *must be in writing* and *be filed with the activity which entered the determination with which disagreement is expressed* ....

(2) Notices of disagreement, and appeals, *must be in writing and may be filed by the claimant, the claimant's legal guardian, or such accredited representative, attorney, or authorized agent as may be selected by the claimant or legal guardian.*

38 U.S.C. § 7105(b)(1)-(2) (1994) (emphasis added).

This statutory language supplies some requirements for a valid NOD. For instance, title 38 requires a written NOD. In addition, the claimant or his representative must file this writing with the "activity which entered the determination with which disagreement is expressed"—the regional office in this case—within one year of notice of an initial determination. The statute does not, however, define "notice of disagreement" or suggest sufficient ex-

pressions to make a writing an NOD. The statute also does not suggest that its specifications for an NOD—writing, one-year time limit from notice, etc.—are the only requirements for a valid NOD. In sum, § 7105 does not address directly the precise question under review. In a general sense, the statute does not define an NOD. More important, on the *precise* question under review, the statute does not *directly* address whether an NOD is sufficient without a request for appellate review. Therefore, under the standard set by the Supreme Court, title 38 contains "a gap for an agency to fill" with regard to the definition of a legally valid NOD. *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778.

Indeed, the Veterans Department had supplied a regulatory definition of the term "notice of disagreement" as early as 1963. In that earlier regulatory definition, the former 38 C.F.R. § 19.1a(b), an NOD "should be in terms which can be reasonably construed as evidencing a desire for review of [the VA's] determination." Later enactments did not disturb these earlier regulatory definitions of NOD.

Thus, § 7105 does not express a complete and unambiguous meaning for the statutory term "notice of disagreement." Moreover, the statute does not directly address the sufficiency of an NOD without a request for appellate review—the precise question posed by this case. In sum, *Chevron* deference applies to the VA's implementation of § 7105, i.e., 38 C.F.R. § 20.201.

■ The VA promulgated § 20.201 in 1992 to expressly define a "notice of disagreement" in § 7105. As stated in § 20.201:

A written communication from a claimant or his or her representative express-

ing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result will constitute a Notice of Disagreement. While special wording is not required, the Notice of Disagreement must be in terms that can be reasonably construed as disagreement with that determination and a desire for appellate review.

Thus, under § 20.201, a valid NOD must contain "terms that can be reasonably construed as disagreement with that determination and a desire for appellate review."

Section 20.201 is a reasonable and permissible construction of § 7105. Section 7105 does not preclude other requirements for an NOD. Moreover, § 20.201 merely states that a veteran NOD must include terms that can be reasonably construed as a desire for appellate review. This requirement serves administrative efficiency by distinguishing a request for Board review from other routine communications in the wake of a VA decision. Assuming the veteran desires appellate review, meeting the requirement of § 20.201 is not an onerous task.

Section 7105(d) specifies that the regional office must file a "statement of the case" if the matter remains unresolved after an NOD. 38 U.S.C. § 7105(d)(1) (1994). Mr. Gallegos contends that a veteran cannot make an informed decision to appeal without the information in the statement of the case, which the veteran receives only after filing an NOD. To the contrary, the VA decision itself provides the veteran with information for an informed appeal decision. As required under 38 U.S.C. § 5104(b), notice of a VA decision must include a statement of reasons for the decision and a summary of the evidence considered by the VA. 38 U.S.C. § 5104(b)

(1994); see also Hayre v. West, 188 F.3d 1327, 1334 n. 4 (Fed.Cir.1999). Such notice, which a veteran receives before the NOD filing deadline, see § 7105(b)(1), provides the veteran with enough information to support an NOD—namely a letter "reasonably construed as disagreement with . . . a desire for appellate review." Even if still harboring questions, a veteran can easily include his intent to appeal in a letter of disagreement to preserve an appeal option.

Although "initiating" the appeal process, an NOD may or may not actually lead to an appellate review. After receiving the NOD, the regional office reviews the claim again. If the regional office can resolve the disagreement at that point, no appeal ensues. If the regional office cannot resolve the disagreement, it proceeds to prepare a "statement of the case." 38 U.S.C. § 7105(d)(1). The veteran then receives "sixty days from the date the statement of the case is mailed to file the formal appeal." 38 U.S.C. § 7105(d)(3).

In any event, § 20.201 is not procedurally defective, arbitrary or capricious in substance, or manifestly contrary to § 7105 or any other relevant statute. In reaching this conclusion, this court has considered as well the pro-claimant nature of the veteran adjudication system. This court has already decided that *Chevron* deference may apply in the pro-claimant context of title 38. *See Gilpin v. West*, 155 F.3d 1353, 1356, n. 2 (Fed.Cir.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2019, 143 L.Ed.2d 1031 (1999) ("It is beyond question that the Secretary has substantive rule-making power with respect to the benefits in question here and thus *Chevron* deference applies.").

## CONCLUSION

In sum, the Court of Appeals for Veterans Claims erred in not applying *Chevron*

deference to the VA's implementation of 38 U.S.C. § 7105, i.e., 38 C.F.R. § 20.201. The Court of Appeals for Veterans Claims also erred when it invalidated § 20.201 with regard to the requirement that an NOD contain "terms that can be reasonably construed as ... a desire for appellate review." This court, therefore, reverses and remands the decision of the Court of Appeals for Veterans Claims for a determination of whether Mr. Gallegos's 1994 DAV letter constitutes a valid NOD under § 20.201.

## COSTS

Each party shall bear its own costs.

*REVERSED and REMANDED.*

GAJARSA, Circuit Judge, dissenting.

This court should affirm the Court of Appeals for Veterans Claims in *Gallegos v. Gober,* 14 Vet.App. 50 (2000) ("*Gallegos*"), because there is no "gap" in 38 U.S.C. § 7105 with respect to a notice of disagreement ("NOD"). By applying deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), through its prismatic view of a "gap" in a clear statute, the majority upholds a Veterans Administration's ("VA") regulation that rewrites Congress' clearly stated meaning for a NOD. The majority establishes an illusory "gap" by positing questions that the statute clearly answers, and then asserting that these supposedly unan-

swered questions justify the VA's regulation: "whether a[ ] NOD is sufficient without a request for appellate review," and whether the statute "define[s] a 'notice of disagreement'." Maj. Op. at 1312–13.[1]

I believe, however, that the plain meaning and structure of § 7105 leave no room for an agency to add additional requirements to a NOD: the inquiry does not pass step one of the *Chevron* test.[2] Without *Chevron* deference, the regulatory requirement that the NOD must "express a desire for appellate review" as established by the VA's regulation, 38 C.F.R. § 20.201, cannot be upheld. Further, relevant precedent and policy dictate that the holding of the Court of Appeals for Veterans Claims should be affirmed. Therefore, I respectfully dissent.

The plain meaning of the term "notice of disagreement" does not allow for the addition of procedural requirements, such as expanding the NOD definition to require that claimants also express a desire for appellate review, in order for their NOD to be valid. The plain meaning is not only clear, but obvious. The term "notice" denotes "giv[ing] legal notice to or of ... [t]o realize or give attention to." *Black's Law Dictionary* 1088 (7th ed. 1999). The term "disagreement" specifies the type of notice required in a NOD: "[a] difference of opinion; a lack of agreement." *Id.* at 475.

Thus, by plain meaning, "notice of disagreement" means giving attention to a lack of agreement. In the context of § 7105, this meaning applies to the veter-

---

1. The majority additionally contends that § 7105 does not "suggest sufficient expressions to make a writing a NOD" and does not suggest that its specifications for a NOD are the only requirements. Maj. Op. at 1313. With this statement, however, the majority admits that § 7105 specifies many aspects of

a NOD: "writing, one-year time limit from notice, *etc.*" *Id.* (emphasis added).

2. *See Skinner v. Brown,* 27 F.3d 1571, 1572 (Fed.Cir.1994) ("If the intent of Congress is clear, that is the end of the matter.") (quoting *Chevron* at 842, 104 S.Ct. 2778).

an's claim. The claimant advises the VA of his or her lack of agreement with the initial review or determination for the claim by filing a NOD. 38 U.S.C. § 7501(b)(1) (1994). There is no ambiguity in the well-known concepts of "notice" and "disagreement." These concepts and the plain meaning of these terms do not cover "expressing a desire for appellate review" as called for by the regulation. 38 C.F.R. § 20.201 (2001).

The Court of Appeals for Veterans Claims found, and the majority does not contest, that the letter sent on Mr. Gallegos behalf by the DAV expresses notice of disagreement, *i.e.,* gives attention to a lack of agreement, with the initial decision on Mr. Gallegos' PTSD claim. *Gallegos* at 58. Thus, but for the additional regulatory procedural requirement erroneously added by the VA, the DAV's actions on Mr. Gallegos behalf would have entitled him to the earlier effective date for his claim. The alleged "gap" in § 7105 does not support stripping Mr. Gallegos of his right to the earlier date when the VA improperly added a "technical, formal requirement" for a NOD. *Gallegos* at 57 (citing *Tomlin v. Brown,* 5 Vet.App. 355, 357 (1993)).[3] Because the statute is clear and there is no gap, *Chevron* deference does not apply.[4] The Supreme Court has itself noted that when the statute is clear *Chevron* deference does not apply. *See Dole v. United Steelworkers of America,* 494 U.S. 26, 42–

43, 110 S.Ct. 929, 938, 108 L.Ed.2d 23 (1990); *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778 ("If the intent of Congress is clear, that is the end of the matter"); *id.* at 843 n. 9, 104 S.Ct. 2778 ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

We have more, however, than the plain meaning of "notice of disagreement" to inform the term NOD. In various subsections of § 7105, Congress has given several clear statements concerning the role of a NOD in the process Congress specified whereby a claimant initiates appellate review. Tellingly, the majority does not discuss these portions of § 7105. These provisions describe a multi-step process Congress set forth to initiate appellate review. They delineate the difference between a NOD, the first step, and the later steps, which may eventually lead to a request for review. Further, the majority opinion fails to address Mr. Gallegos' arguments concerning the import of the multi-step process on the meaning of NOD. In the context of this multi-step process, clearly articulated by § 7105, a NOD cannot be expected or interpreted to express a desire for appellate review. The Court of Appeals for Veterans Claims recognized this and applied structural statutory interpretation to reach the correct result—that the VA cannot add an

---

**3.** As put by the Court of Appeals for Veterans Claims: "we conclude that there is no 'gap' in this statutory scheme and that the Secretary, rather than having filled in the gap conjured up by the dissenting opinion, has by regulation raised a barrier to appellate review where none exists in section 7105." *Gallegos* at 56.

**4.** This court has previously reviewed § 7105 and the term "notice of disagreement" in

light of a related but instructive question—whether for jurisdictional purposes § 7105 allows for more than one NOD in a single claim. *Hamilton v. Brown,* 39 F.3d 1574, 1574 (Fed.Cir.1994). In this review, we explicitly found that there was no gap in meaning for a NOD in § 7105 with respect to this question, and therefore, *Chevron* deference did not apply. *Id.* at 1585.

additional procedural· requirement to the NOD.

The relevant sections of § 7105 are set forth below in greater detail to illustrate the provisions ignored by the majority.

§ 7105. Filing of *notice of disagreement and* appeal

(a) *Appellate review will be initiated* by a *notice of disagreement* and *completed by a substantive appeal after a statement of the case is furnished* as prescribed in this section.....

(b) (1) Except in the case of simultaneously contested claims, *notice of disagreement* shall be filed within one year from the date of mailing of notice of the result of initial review or determination.....

(2) *Notices of disagreement, and appeals,* must be in writing . . . .

(c).....

(d) (1) Where the claimant, or the claimant's representative, within the time specified in this chapter, files a *notice of disagreement* with the decision of the agency of original jurisdiction, such agency will take such development or review action as it deems proper under the provisions of regulations not inconsistent with this title. *If such action does not resolve the disagreement either by granting the benefit sought or*

*through withdrawal of the notice of disagreement, such agency shall prepare a statement of the case.* . . . .

(2) . . . .

(3) Copies of the "statement of the case" prescribed in paragraph (1) of this subsection will be submitted to the claimant and to the claimant's representative, if there is one. The claimant will be afforded a period of sixty days from the date the statement of the case is mailed *to file the formal appeal.* This may be extended for a reasonable period on request for good cause shown. The *appeal should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case.* . . . .

38 U.S.C. § 7105 (1994) (emphases and underlining added).

From the claimant's perspective, § 7105 sets forth the following steps for initiating an appeal: (i) within one year from the denial of the claim, file a NOD; (ii) receive a statement of the case; (iii) within sixty days from the date of the statement of the case, file a formal appeal. Our case law recognizes this structure.[5] The structure of this sequence clearly relegates the function of requesting or expressing a desire for appellate review to the last step. The majority provides no viable reason why the

---

5. For example:
   "The filing of a NOD triggers a reexamination of the claim at the AOJ. . . . . If disagreement persists, the appellate machinery moves forward, with the AOJ assisting the veteran in preparing a Statement of the Case (SOC) to present to the Board. The SOC contains a summary of the evidence and factual issues, a statement of the applicable statutes and regulations, and a discussion of their application to the facts. The SOC also sets out the AOJ's determinations on each of the issues that were determined adversely to the veteran. The veteran then selects the issues upon which he seeks to appeal to the Board, and specifies arguments relating to errors of fact or law made by the AOJ in reaching the determination being appealed."
   *Smith v. Brown,* 35 F.3d 1516, 1520 (Fed.Cir. 1994). *See also Hamilton,* 39 F.3d at 1575–76 ("An administrative appeal proceeds through an elaborate set of steps before ending up in the Board of Veterans' Appeals.").

VA's regulation should be allowed to trample on this clear procedural sequence described by Congress. It is true, as the majority describes, that 38 U.S.C. § 501 authorizes the VA to prescribe rules and regulations necessary or appropriate to carry out the laws administered by the VA. 38 U.S.C. § 501 (1994); Maj. Op. at 1311. However, such regulations must be "consistent with those laws." § 501. Given the various clear indications in § 7105 that Congress envisioned a multi-step process, with expression of desire for appellate review being the last step and filing a NOD being the first, the VA's regulation is not "consistent" with § 7105. The VA's regulation merges the first and last step, contrary to the sequence prescribed, and making the statement of the case superfluous. In essence, the VA's regulation violates both § 7105 and § 501 because Congress' intent is clear and no *Chevron* deference should be afforded the regulation.[6]

In particular, the use of the word "and" in the title of § 7105 recognizes that a NOD and an appeal are different steps. If Congress intended the NOD to specify a desire for appellate review, the title would be "Filing of notice of disagreement *for* appellate review." Similarly, § 7105(a) spells out the multi-step process. The NOD merely initiates the process, and a substantive appeal completes the process "after a statement of the case is furnished"

to the claimant. 38 U.S.C. § 7105(a) (1994). Next, § 7105(b)(2) underscores the difference between a NOD and an appeal. § 7105(b)(2). Further, § 7105(d)(1) recognizes that the process may stop after the claimant files the NOD: "if such action does not resolve the disagreement either by granting the benefit sought or withdrawal of the [NOD], [the agency] shall prepare a statement of the case." § 7105(d)(1). Another portion of that subsection then specifies that within sixty days from the date of the statement of the case the claimant must file the formal appeal, and that the appeal is based on the statement of the case. § 7105(d)(3)

I fail to see how Congress could have specified this multi-step micro procedure for initiating an appeal and have not specified the meaning of a NOD within the process. It is clear within the procedure described that the NOD does not express the desire for appellate review because that is the purpose of filing the appeal, a separate step as clearly contemplated by § 7105. The majority mischaracterizes the holding of the Court of Appeals for Veterans Claims, which did not hold that the statutory NOD requirement "needed no interpretation or implementation by" the VA, Maj. Op. at 1311, but rather held that Congress' intent was clear and there was no gap in § 7105 with respect to the meaning and specification of a NOD, *Gallegos* at 56. The Court of Appeals for

**6.** As stated by the Court of Appeals for Veterans Claims:

All that a NOD-filing claimant need desire is review and development by the RO followed by its issuance of an SOC (or SSOC) if the claimant's disagreement is not resolved by the RO. This is the process required by section 7105(d)(1). Ultimately, if the claimant is still dissatisfied after receiving the SOC (or SSOC), he or she then may pursue an appeal to the BVA by filing a Substantive Appeal, and only then does the case go forward to the Board for its review. In other words, after a NOD is filed, it is

quite possible that it may not become necessary to transmit the case to the BVA. How then can it be reasonable for the Secretary to require that every denied VA claimant must, at the time he or she files a NOD, express a desire for BVA review? The answer is quite simply that it cannot be reasonable and that, accordingly, such a regulatory requirement would not be "consistent with" the statutory provisions, as it must be in order to be a valid regulatory requirement promulgated under 38 U.S.C. § 501(a).
*Gallegos* at 56.

Veterans Claims also, correctly in my view, noted that the relevant legislative history supported its interpretation of the term "notice of disagreement."[7] *Gallegos* at 58. In addition, applying its own precedent in *Tomlin*, it expressed what is also in my view the correct, statutorily-authorized requirements for a NOD.[8]

The majority contends, on the one hand, that it considered the "pro-claimant nature of the veteran adjudication system," while on the other, upheld a requirement that "serves administrative efficiency." Maj. Op. at 1314–15. While undoubtedly both policies are important, the majority's holding unnecessarily elevates the latter over the former. This is squarely against our precedent, which has consistently emphasized the Congressionally-mandated pro-claimant nature of the VA system.[9] As correctly expressed by the Court of Appeals for Veterans Claims, this emphasis extends to guidance in statutory interpretation:

**7.** The government argues that the legislative history associated with the Veteran's Judicial Review Act (VJRA), Pub. L. No. 100–687, 102 Stat. 4105, 4113–4121 (1988) (codified as amended at 38 U.S.C. § 7251 (1988)), supports the opposite contention realizable from the plain meaning and structure of § 7105: that Congress understood that a NOD expressed an intention to appeal. H.R. Rep. No. 100–963, pt. 1 at 14 (1988). *See also Hamilton*, 39 F.3d at 1576, 1582–84. This contention does not hold water, however, in light of our holdings in *Hamilton*. First, we noted that "the notion that an expansive Agency definition of a NOD was incorporated into § 402 of VJRA is inconsistent with the plain language of the statute and its legislative history." *Id.* at 1583–84. Further, we explicitly held that the VA's regulatory definition, which at that time contained the overreaching "desire for appellate review" requirement, was not incorporated into the meaning of the statute by the VJRA. *Id.* at 1584.

**8.** As put by the Court of Appeals for Veterans Claims:

the statute provides clearly on its face that appellate review is initiated by a "notice of disagreement". The statute specifies the five elements for such a[ ] NOD: That it must (1) express disagreement with a specific determination of the agency of original jurisdiction (generally a decision by an RO [hereinafter referred to as "RO decision"]) (§ 7105(d)(2)); (2) be filed in writing (§ 7105(b)(1), (b)(2)); (3) be filed with the RO (§ 7105(b)(1)); (4) be filed within one year after the date of mailing of notice of the RO decision (§ 7105(b)(1)); and (5) be filed by the claimant or the claimant's authorized representative (§ 7105(b)(2)). The

only content requirement is an expression of "disagreement" with the decision of the RO.

*Gallegos* at 54. The court further states that in *Tomlin* it noted the "clarity and completeness of the statute," which, by implication, "read out of the regulation any added requirement of an expression of a desire for appellate review." *Id.* at 55.

**9.** For example, in *Hensley v. West*, 212 F.3d 1255 (Fed.Cir.2000), faced with a similar policy question concerning the level of procedural requirements appropriate for the veterans benefit system, we expressed that:

a low evidentiary threshold is particularly appropriate in the veterans context because in the early stages of the application process, the veteran is almost always unassisted by legal counsel. *See* 38 U.S.C. § 5904(c)(1) (attorneys and agents prevented from charging for services rendered prior to date of final decision from BVA). Since significant if not essential evidence regarding the merits of a claim often resides in the DVA's files, it would be fundamentally unfair to erect a steep evidentiary hurdle in front of an unassisted veteran before allowing the veteran to receive assistance from the DVA. The low threshold is also appropriate in light of the *uniquely pro-claimant nature of the veterans compensation system.* See *Hodge v. West*, 155 F.3d 1356, 1362–64 (Fed.Cir.1998) (recognizing that the veterans benefit system is "uniquely pro-claimant"); *Hayre v. West*, 188 F.3d 1327, 1333–34 (Fed.Cir.1999) (pointing out Congress's recognition of "the strongly and uniquely pro-claimant system of awarding benefits to veterans").

*Id.* at 1262 (emphasis added). This same fundamental unfairness attaches to the addi-

Consequently, even were we to find some ambiguity in the statute, which we do not, we would be compelled to resolve "'interpretative doubt ... in the veteran's favor'." *Boyer v. West,* 210 F.3d 1351, 1355 (Fed.Cir.2000) (quoting *McKnight v. Gober,* 131 F.3d 1483, 1485 (Fed.Cir.1997) (quoting *Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994))); *see Allen v. Brown,* 7 Vet.App. 439, 448 (en banc) (applying *Gardner* to resolve interpretative doubt in veteran's favor).

*Gallegos* at 56.

The interpretative guidance expressed by this pro-claimant policy further informs our job at step one of the *Chevron* analysis. Compounded with the plain meaning and structure of § 7501, and in light of our precedent, the meaning of "notice of disagreement" is clearly specified by Congress and does not reasonably leave any "gap" which the VA need fill by regulation.

For the foregoing reasons, I would affirm the Court of Appeals of Veterans Claims.

tion of a procedural requirement to the clear-
ly defined NOD.