HOLDAWAY, Judge:
The appellant, Frank L. Bellezza, appeals a February 23, 1999, decision of the Board of Veterans’ Appeals (Board) that determined that he was not entitled to payment or reimbursement by VA for the cost of previously unauthorized medical services (that is, medical services not authorized by VA before they were performed on the veteran) incurred in connection with treatment he received at Southwest Florida Regional Medical Center (Southwest Florida) from September 21 to 26, 1995. Record (R.) at 2, 7. The appellant and the Secretary have filed briefs, and the appellant has filed a reply brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the Board’s decision and remand the claim.
I. BACKGROUND
The appellant served on active duty in the U.S. armed forces from February 1966 until January 1968. He was later awarded service connection for, inter alia, anxiety neurosis, and was rated 100% disabled at all times pertinent to this appeal. R. at 3, 10. On September 16, 1995, the appellant was admitted to North Collier Hospital (North Collier), where he was treated for an “[ajeute inferior wall myocardial infarction.” R. at 12-13. He was subsequently transferred to Southwest Florida on September 21, 1995, “for further evaluation *147 including cardiac catheterization.” R. at 13. He was later discharged from Southwest Florida on September 26,1995. R. at 130-31.
On September 28, 1995, Dr. Fred Was-serman, a VA physician assigned to review the appellant’s claim for reimbursement of expenses for unauthorized medical care that Southwest Florida provided (a claim that was not formally filed until November 15, 1995) prepared a Report of Contact form indicating the following:
“High probability noted that emergency condition had resolved prior to transfer; without information from N.Collier Hospital, [I] am unable to assess if this period of hospitalization was for an emergency condition or if emergency condition had resolved prior to transfer.”
R. at 162.
On November 20, 1995, Dr. Wasserman signed a second Report of Contact form indicating that he had reviewed the claim, and that the “[plrofessional prerequisites of 38 C.F.R. § 17.80 [(now 38 C.F.R. § 17.120) ] have' not been satisfied,” and stating: “Nonemer[gency] (emergency] had resolved prior to transfer)[;] VA facility] available].” R. at 170. On November 21, 1995, the Chief of the Medical Administration Service (MAS) at the Bay Pines VA Medical Center (VAMC) in Bay Pines, Florida, disapproved the claim for medical care at Southwest Florida, because “[c]are and services were not rendered in a medical emergency of such nature that delay would have been hazardous to life or health.” R. at 166. The appellant filed a Notice of Disagreement as to the denial. R. at 174-75.
In December 1995, Dr. Luis Bonet, the appellant’s treating physician at North Collier, filed a statement indicating that the appellant presented in the emergency room with acute myocardial infarction, that he had received treatment, and that “[w]hen his condition was judged to have improved, he was referred to a tertiary center ... for further Dx [ (diagnosis) ] and Rx [ (treatment) ].” Dr. Bonet concluded that the appellant’s “condition was stabilized enough for an ambulance ride of 20[to] 30 minutes, but not good enough for a 3[-]hour[ ] ride to St. Petersburg/Tampa [VAMC],” (R. at 168 (emphasis in the original)) apparently the closest VA facility.
In January 1996, Dr. Michael P. Metke, the appellant’s treating physician at Southwest Florida, stated, after reviewing the medical records from North Collier, that he agreed with Dr. Bonet’s opinion that North Collier was unable to provide the necessary ’ care, and that at the earliest opportunity, Mr. Bellezza was transferred to the closest facility capable of performing a coronary angiograph and coronary artery revascularization. He further stated that “because of his unstable situation ... [transferring the patient to] the nearest available facility to proceed with coronary angiograph and revascularization was in this patient’s best interest.” R. at 172. Dr. Metke later opined that the appellant had been “in a life[-]threatening situation” at the time of his transfer from North Collier to Southwest Florida (R. at 177) and that “it would have involved accepting a higher risk to the life of [the appellant] had he been required to be transported to another institution before revascularizing his heart” (R. at 180). The MAS Chief issued a Statement of the Case (R. at 182-93), and the appellant filed a Substantive Appeal to the Board (R. at 195-96).
In its February 23, 1999, decision, the Board, in denying the appellant’ claim for reimbursement of medical expenses incurred at Southwest Florida before the treatment was authorized, stated:
The regulation is clear as to the treatment for which the VA can and cannot pay or reimburse. Under 38 C.F.R. *148 § 17.121 [ (2001),] only a VA physician is empowered to determine when a veteran who received emergency hospital care could have been transferred to a VA medical center or when the veteran could have reported to a VA medical center and in this case that determination has been rendered by a VA physician, who has indicated that the veteran could have been transferred to a VA facility on September 21, 1995. In view of this regulation!],] the Board finds that the private physicians’ opinions have little probative value. Although the Board is sympathetic to the veteran’s situation, there simply is no legal basis upon which the Board could find VA responsible for the veteran’s medical treatment at Southwest Florida from September 21 to September 26, 1995. This being the case, the Board must deny the veteran’s claim of entitlement to reimbursement or payment of the cost of medical treatment provided in association with private hospitalization from September 21[to] 26, 1995, at Southwest Florida.
R. at 6. Following that decision, the appellant properly and timely filed this appeal.
II. ANALYSIS
At the heart of this case is whether the Board correctly interpreted 38 C.F.R. § 17.121 (2001). “Whether the ... Board has properly interpreted a law or regulation is a matter which this Court reviews de novo.” Cropper v. Brown, 6 Vet.App. 450, 454 (1994); see also Hunt v. Derwinski, 1 Vet.App. 292, 293 (1991). However, in doing so, “[substantial deference is given to the statutory interpretation of the agency authorized to administer the statute.” Livesay v. Principi, 15 Vet.App. 165, 172 (2001) (en banc) (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); see also Tollman v. Brown, 7 Vet.App. 453, 463-65 (1995). This Court will defer to “VA’s reasonable interpretation of a statutory provision when the law ... leaves ‘a gap for an agency to fill,’ ” and the agency fills that gap with an “interpretive regulation ‘based upon a permissible construction of the statute.’ ” Gallegos v. Principi, 283 F.3d 1309, 1312 (Fed.Cir.2002) (citations omitted).
The appellant argues that 38 C.F.R. § 17.121 is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, because it requires that claims for reimbursement of expenses for unauthorized medical care and services be decided on an “irrational basis.” He also argues that the regulation conflicts with 38 U.S.C. §§ 5107(b) and 7104(a). The Secretary argues that the Court should vacate the Board’s decision and remand the claim because the Board failed to provide sufficient reasons and bases for its determination as required pursuant to 38 U.S.C. § 7104(d)(1) and Allday v. Brown, 7 Vet.App. 517, 527 (1995) (holding that a statement of reasons or bases must be adequate to enable claimant to understand precise basis for Board’s decision, as well as to facilitate judicial review). The Court rejects both parties’ arguments. The regulation does not conflict with the statutes, nor does the Board’s error lie in its articulation of reasons and bases for its decision. Although the Board correctly found that “only a VA physician is empowered to determine when a veteran who received emergency hospital care could have been transferred to a VA medical center,” the Court finds, upon de novo review, that the Board erred in limiting its review of the VA physician’s determination.
The focus of the appellant’s challenge is on the regulation’s requirement that only a VA physician may decide when a medical emergency ends, for purposes of entitlement to benefits under 38 U.S.C. § 1728 *149 and 38 C.F.R. § 17.120. Indeed, had the language of the regulation read as the appellant suggests (i.e., that the Board is not permitted to review the private physician’s opinions as to the ending point of the medical emergency), the regulation might arguably be invalid as being contrary to 38 U.S.C. §§ 5107(b) and 7104(a), which require the Board to consider all evidence available in deciding the appellant’s eligibility to receive benefits. However, the regulation requires more than just a VA physician’s unbridled determination as to the ending point of an emergency for purposes of granting or denying benefits.
Section 1728 of title 38 provides for the reimbursement of certain medical expenses pursuant to “such regulations as the Secretary shall prescribe,” including reimbursing veterans entitled to hospital care at a VA facility for care they instead received from a non-VA facility, provided certain conditions are satisfied. The statute does not spell out the specific means by which such reimbursement is to be provided. Rather, the statute, in conjunction with the provisions of 38 U.S.C. § 501, authorizes the Secretary to fill such administrative gaps in awarding benefits. Accordingly, the Secretary promulgated 38 C.F.R. § 17.121, the pertinent part of which reads as follows:
Claims for payment or reimbursement of the costs of emergency hospital care or medical services not previously authorized will not be approved for any period beyond the date on which the medical emergency ended. For the purpose of payment or reimbursement of the expense of emergency hospital care or medical services not previously authorized, an emergency shall be deemed to have ended at that point when a VA physician has determined that, based upon sound medical judgement, a veteran:
(a) ... could have been transferred ... to a VA medical center....
(b) ... could have reported to a VA medical center....
38 C.F.R. § 17.121 (2001) (emphasis supplied). This regulation simply fills the gaps left in the statute as to the mechanics used to award the benefits authorized by the statute, and is based upon a permissible construction of that statute. See Gallegos, supra.
Although the regulation requires that a VA physician determine when a medical emergency has ended, it also requires that the Board make a factual determination as to whether the physician exercised sound medical judgment in arriving at his decision. It is in this factual determination that the Board satisfies its requirement under 38 U.S.C. §§ 5107(b) and 7104(a), to review all available evidence. Contrary to the appellant’s arguments, the regulation does not require the Board to blindly rubber-stamp the VA physician’s decision as “conclusive.” Despite the appellant’s argument that the Board, in deciding entitle-" ment to benefits under 38 C.F.R. § 17.121, cannot consider private physicians’ opinions, the reality is that those private physicians’ opinions must be considered by the VA physician before the VA physician can determine when an emergency ended. Moreover, it is clear from the record in this case that the VA physician did consider them.
By definition, every veteran seeking benefits under 38 U.S.C. § 1728 and 38 C.F.R. § 17.120 received medical care or services from a non-VA physician. A VA physician who has not provided the medical care or services in question must, perforce, consider the opinions of the attending physicians in order to make a sound medical determination related to the care and services in question. The history of *150 the regulation supports this conclusion. See 49 FecLReg. 15548 (Apr. 19, 1984) (“The VA will obtain all available medical documentation and evidence from a treating facility to assist in making a decision based on sound medical judgment.”). Sound medical judgment would seem to require, at a minimum, that the VA physician making the determination examine and account for available medical records. It is the Board’s responsibility to ensure that the VA physician’s determination as to the ending point of the medical emergency considered the private physicians’ opinions and records. Here, the Board erred in determining that it could not do so. It had a positive duty to inquire into the “sound medical judgment” of the VA physician.
As an aside, the Court notes that the veterans’ benefits system, at the administrative adjudication level, is by design a non-adversarial process. It does not, as the appellant suggests, and as may be typical in other courts, set the veteran against the Secretary. There are no “par-dies” prior to the commencement of the litigation phase of the process. VA physicians have no personal interest, pecuniary or otherwise, in whether particular veterans receive benefits under title 38 of the U.S.Code. They are, thus, simply “neutral” gatekeepers whose purpose is to render objective medical opinions. Someone must ultimately make a determination as to when a medical emergency ended for purposes of awarding or denying benefits under 38 U.S.C. § 1728. The Board cannot perform this gatekeeper function because the Board is not authorized to render unsubstantiated medical determinations. See Colvin v. Derwinski, 1 Vet.App. 171 (1991). To permit diverse private physicians who provided the care and services at issue, and who might have a vested interest in the determination, to make that ultimate determination, would not be appropriate and would lead to dissimilar results in similar cases. Requiring that the decision be made by a neutral individual capable of making such medical determination, as the regulation does, is an appropriate exercise of the Secretary’s rule-making power. Additionally, by requiring that the ultimate decision be made by VA physicians, the Secretary ensures some amount of uniformity in decisions as to whether particular veterans receive benefits under the statute.
The Court points out that the regulation, as written, provides adequate safeguards to ensure that the Board and the veteran have appropriate avenues with which to address and/or challenge either all or part of the VA physician’s decisions concerning the ending point of the medical emergency. The Board has not only the capability, but also the responsibility to make a factual determination as to whether the VA physician exercised sound medical judgement in deciding the ending point of a medical emergency at issue, and should the veteran disagree with the Board’s factual findings on this point, the veteran has the right to appeal them.
Finally, the Court notes that the Board, in reviewing all the evidence available, in order to determine whether the VA physician exercised sound medical judgment, as required by sections 5107(b) and 7104(a), need not accept that physician’s decision as conclusive. Rather, the Board may determine the VA physician did not exercise sound medical judgment because he or she failed to consider certain evidence, or otherwise failed to account for why his opinion was contrary to overwhelming evidence that might have lead to another conclusion. Colvin, 1 VetApp. at 175 (inviting the Board to seek out other medical evidence if it was not satisfied that the evidence available was sufficient for it to make a determination). In such instances, the *151 Board could require that the physician clarify certain inconsistencies, consider evidence not previously considered, or seek the opinion of another VA physician. Nothing in the regulation restricts the Board to one VA physician’s opinions. Id.
III. CONCLUSION
In this case, the Board failed to make a factual determination as to whether Dr. Wasserman exercised sound medical judgment in determining the ending point of the medical emergency at issue. In deciding whether. Dr. Wasserman exercised sound medical judgment, the Board, by necessity; should have considered probative the views of the private physicians. Therefore, because the Board erred in limiting its review of Dr. Wasserman’s determination, the Court will VACATE the Board’s decision and REMAND the claim for readjudication, so that the Board may have the opportunity to determine whether Dr. Wasserman’s decision was based upon s,ound medical judgment. The Board’s decision as to whether sound medical judgment was used must be based upon all the evidence available. See Weaver v. Principi, 14 Vet.App. 301, 302 (2001). Additionally, on remand, the appellant is free to submit additional evidence and argument necessary to the resolution of his claim. Kutscherousky v. West, 12 Vet.App. 369, 372 (1999). The Board shall proceed expeditiously in accordance with section 302 of the Veterans’ Benefits Improvement Act, Pub.L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring the Secretary to provide for “expeditious treatment” for claims remanded by the Board or the Court). See Drosky v. Brown, 10 Vet.App. 251, 257 (1997); Allday v. Brown, 7 Vet.App. 517 (1995). Moreover, if the circumstances warrant, the Board is authorized and obligated to remand the claim to the VA regional office for further development. See 38 C.F.R. § 19.9(a) (1999); Littke v. Derwinski 1 Vet.App. 90 (1990).