KASOLD, Chief Judge,
dissenting in part and concurring in part:
I respectfully dissent from the majority’s decision that 38 C.F.R. § 4.71a, DC 5055 (2013), does not apply to partial knee replacements. That DC 5055 is anything but clear in its scope is reflected by the fact that it does not answer the question as to whether it covers only total knee replacements or whether it also covers partial knee replacements. See, e.g., Bell Atl. Tel. Cos. v. FCC, 131 F.3d 1044, 1047 (D.C.Cir.1997) (noting that ambiguity is a conclusion reached when the question presented is not answered “at the level of literal language”). Ambiguity also is reflected by the fact the appellant has submitted 11 Board decisions rating partial knee replacements under DC 5055, as well as the fact that the Secretary stated at oral argument that he could identify only 3 Board decisions finding that DC 5055 applies only to total knee replacements, with the Board decision now on appeal being 1 of the 3.[7]
*566 The lack of clarity in DC 5055 is confirmed by the fact that the Secretary has informed the Court that no action is being taken to modify the 11 purportedly errant Board decisions based on clear and unmistakable error, or because they are otherwise clearly erroneous, which says much about the Secretary’s litigation position— and the majority’s decision — that the scope of DC 5055 is clear on its face. Succinctly stated, (1) DC 5055 addresses “Knee replacement (prosthesis)” and nothing in the DC restricts it to a total knee replacement as opposed to a partial knee replacement, and (2) the Board has interpreted DC 5055 to address full knee replacements at times, and partial knee replacements at other times, with the more consistent interpretation being that DC 5055 applies to partial knee replacements!
The Board renders the final decision for the Secretary on all questions in matters affecting the provision of benefits, subject only to the statutes governing such benefits and related judicial rulings, as well as VA regulations, instructions of the Seere-tary, or VA General Counsel opinions. See 38 U.S.C. § 7104(c). Here, there is no specific statute or judicial ruling (until today) on the issue before the Court. There is no VA General Counsel opinion or instruction of the Secretary. We have only a regulation written many, many years ago, and at least 11 Board decisions that have interpreted DC 5055 to cover partial knee replacements and only 3 that have interpreted it as limited solely to total knee replacements.[8]
Under such circumstances, there is no room for any finding that the regulation clearly is limited to total knee replacements, and there should be no room for any ruling that permits an inequitable application of DC 5055 dependant on the whim of the particular veterans law judge rendering a Board decision, particularly when the Secretary does not intend to correct what would be clearly erroneous decisions — action he presumably would take if the regulation were clearly limited to total knee replacements, as purported by the Secretary in this litigation.[9] See 38 *567 U.S.C. § 7111 (Board may revise decisions based on clear and unmistakable error (CUE)); § 7103(c) (essentially the same); § 5109A (Secretary may revise Board decisions based on CUE).
Although deference generally is due the Secretary on the interpretation of his own regulations, the Board decisions reflect that the Secretary does not have a consistent interpretation. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that in the absence of congressional intent, a court must defer to an agency’s interpretation of a statute as long as the interpretation is based on a permissible construction of the statute); see also Auer v. Robbins, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (noting Secretary’s litigation position may not be a “ ‘post hoc rationalization’ advanced by an agency seeking to defend past agency action against attack.” (internal citations omitted)).
In my opinion, this is when Gardner trumps Chevron with regard to regulatory interpretation. See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“[I]nterpretive doubt is to be resolved in the veteran’s favor .... ”); see also Heino v. Shinseki, 683 F.3d 1372, 1379 n. 8 (Fed.Cir.2012) (noting lack of clarity on how Gardner fits with Chevron, and comparing “Nielson v. Shin-seki, 607 F.3d 802, 808 (Fed.Cir.2010) (stating that the [Gardner] canon ‘is only applicable after other interpretive guidelines have been exhausted, including Chevron ’), with Disabled Am. Veterans v. Gober, 234 F.3d 682, 692, 694 (Fed.Cir.2000) (stating that the [Gardner ] canon ‘modifies] the traditional Chevron analysis’)”); Smith v. Brown, 35 F.3d 1516, 1523 (Fed.Cir.1994) (noting that the canons of statutory interpretation apply to interpreting regulations).
Succinctly stated, in the face of inconsistent interpretations of a regulation, there is no basis to defer to the Secretary’s proffered interpretation, see Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (“[A]n agency’s interpretation of a statute or regulation that conflicts with a prior interpretation is ‘entitled to considerably less deference’ than a consistently held agency view ....”) (emphasis added) (internal quotation marks omitted) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)); see also Christopher v. Smith-Kline Beecham Corp., — U.S.-, 132 S.Ct. 2156, 2168, 183 L.Ed.2d 153 (2012) (noting “[o]ur practice of deferring to an agency’s interpretation of its own ambiguous regulations ... creates a risk that agencies will promulgate vague and open-ended regulations that they can later interpret as they see fit”), and ambiguity should be interpreted in the light most favorable to the veteran, see Gardner and Smith, both supra.
Although the Secretary points to an unsigned bulletin in support of his interpretation, this bulletin does not constitute a General Counsel opinion or instruction to the Board from the Secretary; accordingly, the bulletin is not binding on the Board, which renders final decisions for the Secretary. See 38 U.S.C. § 7104(a), (c).
*568 As noted above, DC 5055 is indeed ambiguous; accordingly, I would apply Gardner, reverse the reduction in disability rating, and remand the matter for readju-dication consistent therewith. I further note that because our panel decisions are precedential, such a holding would be binding on the Secretary until and unless he undertook the process necessary for revising his regulation. See Nat’l Org. of Veterans Advocates, Inc. v. Sec’y of Veterans Affairs, 710 F.3d 1328, 1331-32 (Fed.Cir.2013) (noting that in order to change a regulation after a precedential Court decision, Secretary must follow notice-and-eomment requirements); Suozzi v. Brown, 10 Vet.App. 307, 311 (1997) (“VA is bound to follow the controlling precedential decisions of this Court.”).
With regard to the remainder of the majority decision, I note that even when DC 5055 applies, the Board should consider whether rating by analogy to another DC would provide a higher disability rating, as might be the case here, where DC 5055 appears to overlap with 38 C.F.R. § 4.71 a, DCs 5256-5263 (2013). Accordingly, I agree with that part of the majority decision, including the reversal of the reduced rating, and the remand.

. The majority’s concern that the Board decisions are not in the record and their citation to Kyhn v. Shinseki, 716 F.3d 572, 578 (Fed.Cir.2013), which held that the Court cannot find facts in the first instance, is perplexing. Because DC 5055 addresses knee replacements without any reference to it being limited to full knee replacements, we can and should take judicial notice how the Board has interpreted this DC. See Smith v. Derwinski, 1 Vet.App. 235, 238 (1991) (Court "may take judicial notice of facts not subject to reasonable dispute”). To ignore the Board’s interpretations is to ignore the history of interpretation of this DC and to foster inconsistent and inequitable application. The majority's citations to Federal Express Corp. v. Holowecki, 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) and Tropf v. Nicholson, 20 Vet.App. 317 (2006) are inap-posite. Holowecki involved some degree of inconsistency in over 175,000 inquiries per year, while this case involves 14 reported Board decisions interpreting the regulation in question, and the majority of those are contrary to the Secretary’s interpretation preferred in this litigation. Tropf noted that the "unchallenged historical practice of the Secretary is not evidence that the practice is 'correct ’,” 20 Vet.App. at 321, n. 1 (emphasis added), but that is in the context of a regulation that does not support that practice. Despite the majority’s efforts, they cannot create clarity where clarity does not exist; the regulation (DC 5055) in question in this case is decidedly unclear in its scope as it could cover full or partial knee replacements, and the Board's varied interpretations only support that conclusion. The Board decisions reflect that there is no consistent interpretation of DC 5055. Given the lack of any consistent interpretation, we should apply Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, *566 130 L.Ed.2d 462 (1994), as noted in the text of my dissent — which would then render the "correct” interpretation, until and unless the DC properly is amended thereafter.

. The majority’s view that the Board does not interpret regulations is wholly inconsistent with our precedent, and, contrary to their assertions, not supported by the statutes and regulations governing the jurisdiction of the Board. See 38 U.S.C. § 7104 (Board decisions are rendered on applicable provisions of law and regulation); see, e.g., Mariano v. Principi, 17 Vet.App. 305, 318 (2003) (remanding for Board to address the two possible interpretations of DC 5201, noting that "it is preferable for the Secretary to undertake the initial consideration of this matter”); Hatlestad v. Derwinski, 1 Vet.App. 164, 167 (1991) (remanding for Board to address the interrelationship of five regulatory provisions and resolve apparent conflicts in the language of those provisions); see also Bellezza v. Principi, 16 Vet.App. 145, 148 (2002) (reviewing whether Board’s interpretation of regulation was reasonable); Webb v. Brown, 7 Vet.App. 122, 124 (1994) (remanding for Board to consider interpretation of VA regulations in light of other regulations and statutory provisions); Payne v. Derwinski, 1 Vet.App. 85, 87 (1990) (same). The majority appears to confuse the concept that Board decisions are not prece-dential with the fact that the Board does indeed interpret regulations, and the fact that those interpretations represent the Secretary's view until and unless (1) the Secretary clarifies the regulation or issues an instruction, see 38 U.S.C. § 7104(c), (2) the VA General Counsel renders a contrary opinion, id., or (3) the Board’s interpretation is overturned judicially, see 38 U.S.C. § 7261 (court's scope of review).

. My colleagues misconstrue the intent behind my noting that the Secretary has indicated he will not take any action to correct Board decisions that have misapplied DC 5055, as he now states it should be interpreted. I note the inaction not to invite such *567 action, but to highlight the fact that the very ambiguity of DC 5055 precludes such action. Cf. Fugo v. Brown, 6 Vet.App. 40, 43 (1993) ("CUE is a very specific and rare kind of 'error.' It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." (emphasis in original)).