# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0086

Daniel W. Beverly, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided        December 29, 2005  )

*Glenn R. Bergmann*, of Berrien Springs, Michigan, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Lavinia A. Derr*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and LANCE and DAVIS, *Judges*.

LANCE, *Judge*:  The appellant, Daniel W. Beverly, seeks review of a December 9, 2003, Board of Veterans' Appeals (Board or BVA) decision that denied reimbursement for costs incurred at a community residential care (CRC) facility, beginning in March 2001.  Record (R.) at 1-7.  This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. §§ 7252(a) and 7266.  For the reasons that follow, the Board's decision denying reimbursement for costs incurred at a CRC facility will be affirmed, and the matter of whether an informal claim to reopen a previously denied claim for special monthly compensation (SMC) for aid and attendance had been presented will be remanded for further proceedings consistent with this opinion.

## I. FACTS

The appellant served on active duty in the U.S. Army from March 1967 to January 1969. R. at 11.  In a March 1969 decision, the Los Angeles, California, VA regional office (RO) granted him service connection for schizophrenic reaction and assigned a 10% disability rating.  R. at 93.

In November 1973, the RO increased the appellant's disability rating to 100% for his service-connected schizophrenia. R. at 95-96. In a January 16, 1998, RO decision, VA determined that he was not competent to handle the disbursement of funds and denied an inferred claim for SMC under 38 U.S.C. § 1114(l), (s) because he was not "so helpless as to be permanently bedridden or in need of regular aid and attendance," or permanently housebound by reason of his service-connected disability. R. at 101-03. In reaching that determination, VA received and reviewed recent letters of conservatorship issued by the Superior Court of California as well as a statement by Dr. James E. Rosenberg, chief of psychiatric intensive care at a VA medical center, who determined that the appellant lacked capacity to make informed choices about his finances. *Id*. The appellant did not appeal that decision and it became final.

In March 1999, Guy C. Lamunyon, R.N., the appellant's case manager in VA's Intensive Psychiatric Community Care (IPCC) Program, sent a letter to the Superior Court of California that noted that the appellant was a participant in the IPCC Program. R. at 105. Mr. Lamunyon indicated that the IPCC Program would continue to follow the appellant with weekly contacts and frequent home visits for the duration of his benefits. *Id*.

In an April 21, 2003, letter, Dr. Stephen Marder, the IPCC medical director, verified that the appellant had been referred to the Salvation Army Haven/Exodus Lodge (Exodus Lodge), a licensed facility for the mentally disordered, on March 5, 2001, and again on August 3, 2001, as a result of chronic medication noncompliance. R. at 165. A March 6, 2001, psychiatric progress note also confirms that the appellant had been discharged to Exodus Lodge, a CRC facility. Supplemental (Suppl.) R. at 1. In a July 19, 2001, IPCC progress note, Mr. Lamunyon, reported the following:

> Escorted vet[eran] to Court 95 and back to unit. Vet[eran] withdrew his objections to the renewal of the . . . conservatorship with the agreement that he can have [his] drivers license restored after six months if stable and medication compliant living in a board and care. Vet[eran] understands he is to remain an additional six months in a board and care prior to returning to the community. Vet[eran] also understands that medication noncompliance resulting in readmission within this time frame will result in locked placement. Vet[eran']s wife/conservator is in agreement with these terms.

R. at 171. An August 3, 2001, progress note recorded:

> [C]lient [was] escorted to [E]xodus [Lodge,] paperwork and med[ication]s given to staff. [C]lient expressed belief that he did not "need to be in a board and care" but

would agree to stay there for at least 6 months and take medications for "5 years" because he promised Guy Lamunyon and Dr. Marder that he would.

Suppl. R. at 3.

On December 15, 2002, the appellant appeared at the Los Angeles, California, VA office and requested reimbursement for his rent at the CRC facility. R. at 112. In a December 16, 2002, letter, VA informed him that his request for reimbursement was denied on the basis that VA regulations require that the cost of care be financed by the veteran's own resources. R. at 107. In January 2003, he filed a Notice of Disagreement (NOD) and VA issued a Statement of the Case. R. at 137-39, 109-13. The appellant filed a timely Substantive Appeal requesting retroactive payment for his rent at the CRC facility beginning in March 2001. R. at 115.

On May 12, 2003, the appellant was provided a BVA hearing where he contended that VA should reimburse him for the costs of the CRC facility because he is 100% service connected for schizophrenia, and the costs incurred were a direct result of his service-connected disability. R. at 175-78. He also maintained that he was referred to CRC by a VA doctor who "coerced" him into going to the CRC facility. R. at 175-78. He stated that as a result of his mental condition, he was given "two ultimatums": (1) A locked facility, or (2) a CRC facility. R. at 178. Last, because he was required to stay at the CRC facility to regulate his medications, he contended that this should be considered "medical treatment" subject to reimbursement under 38 C.F.R. § 17.120 (2003). *Id.*

At the May 2003 hearing, the Board Chairman informed the appellant that there "may be a deficiency in the record" with regard to VA's responsibilities under the Veterans Claims Assistance Act (VCAA) of 2000, but that it is a deficiency that may be waived. R. at 179. The Chairman further noted that "if it becomes necessary to cure that [deficiency], that would . . . have to be done." *Id.* The appellant declined to waive his right to further VCAA development. R. at 180.

By correspondence dated July 30, 2003, and September 25, 2003, the appellant requested that the Board advance his case on the docket based upon the severity of his service-connected mental condition. R. at 190, 192. Attached to his July 2003 request was an examination report by Dr. Steven Marder, on VA Form 21-2680, Examination for Housebound Status or Permanent Need for Regular Aid and Attendance. R. at 195-96. Dr. Marder noted the appellant's complaint that board and care placement was causing a financial hardship for him and his family. R. at 195. Dr. Marder

3

also noted: "[Veteran's] chronic medication noncompliance has resulted in one or more hospital admission[s] per year over the past 30 years. Medication monitoring in a board and care environment has maintained the veteran for two years without readmission, but is causing a financial strain on the family." R. at 196. Dr. Marder certified that the appellant required the daily personal health care services of a skilled provider without which he would require hospital, nursing home, or other institutionalized care. *Id.*

In his July and September 2003 correspondence, the appellant requested that Dr. Marder's report "be incorporated into the evidentiary record and appropriate actions be taken." R. at 190, 192. Subsequently, on October 17, 2003, the appellant filed a formal motion to advance his case on the Board's docket. R. at 199. Although it is unclear from the record what caused the delay, the record reflects that the Board did not receive Dr. Marder's examination report until October 17, 2003, the same date as the appellant's formal motion to advance his case on the Board's docket. R. at 197, 199. His motion was granted on November 10, 2003. R. at 201.

On December 9, 2003, the Board issued the decision on appeal. R. at 1-7. As a preliminary matter, the Board discussed the enactment of the VCAA, Pub. L. No. 106-475, 114 Stat. 2096, as well as the appellant's refusal to waive any VCAA-compliance deficiencies that may have been found. R. at 3-4. The Board concluded that because the law, and not the evidence, was dispositive of the issues on appeal, the VCAA notice requirements were not applicable and any deficiencies in notice were therefore moot and nonprejudicial to the appellant. *Id*. As to the merits of the appellant's claim, the Board discussed the provisions of law and pertinent regulations that permit the Secretary to assist a veteran by referring the veteran for placement in, and aiding in obtaining placement in, an approved CRC facility under certain circumstances. R. at 4-6 (citing 38 U.S.C. § 1730(a); 38 C.F.R. §§ 17.61(b), 17.62 and 17.63 (2003)). The Board concluded that "although the Secretary may refer a veteran to a CRC facility, neither the United States government nor the Department of Veterans Affairs is responsible for paying the cost of CRC care provided to a veteran." R. at 6 (citing 38 U.S.C. § 1730); *see* 38 C.F.R. § 17.63(k) (2005).

In denying the appellant's claim, the Board also addressed his contention that the CRC costs should be reimbursed under 38 C.F.R. § 17.120(b) as services rendered in a medical emergency. R. at 6. The Board found this argument without merit "as the veteran's treatment at this facility was not

due to a medical emergency of such a nature that delay would have been hazardous to life or health." *Id*. More significantly, the Board found the language of 38 U.S.C. § 1730(b)(3) unequivocal, and concluded that there was no legal basis for reimbursement of costs incurred at a CRC facility. R. at 7.

## II. ANALYSIS

### A. Parties' Contentions

On appeal, the appellant contends that VA failed to provide adequate VCAA notice and requests that the Court remand the matter for additional development. Appellant's Brief (Br.) at 7-12. Specifically, he avers that the Board erred in its finding that the VCAA notice requirements were not applicable. Br. at 8. He attempts to distinguish *Mason v. Principi*, 16 Vet.App. 129 (2003) and *Valiao v. Principi*, 17 Vet.App. 229 (2003) from this case by maintaining that the Board in this case made factual findings when it rejected his argument for reimbursement under 38 C.F.R. § 17.120, and that, therefore, it could not be said that the law, and not the evidence, was dispositive of his claim. Br. at 9-10. Accordingly, the appellant asserts that he has been prejudiced by VA's failure both to inform him of the evidence necessary to substantiate his claim, and to inform him of who bore the responsibility for obtaining such evidence. Br. at 10-11. He also maintains that the Board failed to provide an adequate statement of reasons or bases, and failed to account for all evidence of record, when it rejected his argument that 38 C.F.R. § 17.120 authorized his claim for reimbursement of expenses incurred at the CRC facility. Br. at 17-18.

The appellant further contends that the Board failed to consider all pertinent regulations because, in denying his claim for reimbursement for the CRC costs, the Board failed to consider an "alternative avenue of achieving the same result," that is, to consider offsetting board and care costs by awarding SMC for aid and attendance. Br. at 13; *see* 38 C.F.R. §§ 3.351, 3.352 (2005). In support of this argument, the appellant asserts that his stay at the CRC facility was necessary because of his medication noncompliance and because his treating VA psychiatrist had certified in a form entitled "Examination for Housebound Status or Permanent Need for Regular Aid and Attendance," that he requires "daily personal health care services of a skilled provider without which the veteran would require hospital, nursing home or other institutionalized care." R. at 196; Br. at 15. He also

5

asserts that, had VA properly considered his underlying claim to include a claim for SMC for aid and attendance, additional development and VCAA notice would have been necessary. Br. at 11-12. Finally, he contends that the Board failed to consider 38 C.F.R. § 17.63(k)(2), which states in pertinent part that "[t]he resident or an authorized personal representative and a representative of the [CRC] facility must agree upon the charge and payment procedures for [CRC]." Br. at 16-17.

The Secretary urges the Court to affirm the Board's decision. The Secretary maintains that because VA is barred by statute, 38 U.S.C. § 1730, from paying the costs incurred by a veteran at a CRC facility, the law and not the evidence is dispositve of the appellant's claim, and therefore, any error in providing VCAA notice is nonprejudicial error. Secretary's (Sec'y) Br. at 4-8. The Secretary also asserts that, to the extent the Board made any factual findings regarding the appellant's contentions under 38 C.F.R. § 17.120, the Board's consideration should be deemed harmless error, since VA is bound by statute and regulation to deny reimbursement for costs incurred at a CRC facility. Sec'y Br. at 8-9.

In response to the appellant's argument that the Board should have considered a claim for SMC, the Secretary asserts that a claim for SMC was denied in 1998, and the appellant has failed to reasonably raise before the Board a claim to reopen. Sec'y Br. at 9. He urges the Court to hold that there is no jurisdiction-conferring NOD or Substantive Appeal with respect to the appellant's alleged SMC claim, and therefore, the Court lacks jurisdiction over the matter. *Id*.

B. Applicable Law and Regulation

Section 1730 of title 38, U.S. Code, entitled "Community residential care," authorizes the Secretary to assist a veteran, by referring such veteran for placement in, and by aiding in obtaining placement in, a CRC facility. Congress directly spoke to VA's ability to incur the costs for any care or service provided to a veteran who is referred for placement in a CRC facility. Subsection (b)(3) states the following: "Payment of the charges of a community residential-care facility *for any care or service* provided to a veteran whom the Secretary has referred to that facility under this section *is not the responsibility of the United States or of the Department*." 38 U.S.C. § 1730(b)(3) (emphasis added). For purposes of this section, Congress defined "community residential care facility" as "a facility that provides room and board and such limited personal care for and supervision of residents as the Secretary determines, in accordance with the regulations prescribed

6

under this section, are necessary for the health, safety, and welfare of residents."  38 U.S.C. § 1730(f).

Pursuant to his authority, the Secretary promulgated 38 C.F.R. § 17.61, which sets forth the basic criteria for CRC eligibility.  This regulation provides that the Secretary may assist a veteran by referring such veteran to a CRC facility if the veteran, among other things, "does not need hospital or nursing home care but is unable to live independently because of medical (including psychiatric) conditions and has no suitable family resources to provide needed monitoring, supervision, and any necessary assistance in the veteran's daily living activities."  38 C.F.R. § 17.61(b) (2005).  The Secretary further defined "daily living activities" to include "*self-administration of medication*."  38 C.F.R. § 17.62(c)(14) (2005) (emphasis added).

Section 1728 of title 38, U.S. Code, entitled "Reimbursement of certain medical expenses," permits the Secretary to reimburse veterans entitled to hospital care or medical services under chapter 17 for the reasonable value of such care or service under certain circumstances.  Section 1728 provides in pertinent part:

> (a) The Secretary may, under such regulations as the Secretary shall prescribe, reimburse veterans entitled to *hospital care or medical services* under this chapter for the reasonable value of such care or services . . .  for which the veterans have made payment, from sources other than the Department, where –
> (1) such care or services were rendered in a medical emergency of such nature that delay would have been hazardous to life or health;
> (2) such care or services were rendered to a veteran in need thereof [ ] for an adjudicated service-connected disability, . . .; and
> (3) Department or other Federal facilities were not feasibly available, and an attempt to use them beforehand would not have been reasonable, sound, wise, or practical.

38 U.S.C. § 1728 (emphasis added).

Section 17.120 of title 38, Code of Federal Regulations, entitled "Payment or reimbursement of the expenses of hospital care and other medical services not previously authorized," implements section 1728.  It provides, in pertinent part:

> To the extent allowable, payment or reimbursement of the expenses of care, not previously authorized, in a private or public (or Federal) hospital not operated by the Department of Veterans Affairs, or any medical services not previously authorized including transportation . . . may be made on the basis of a claim timely filed, under the following circumstances:

7

(a) *For veterans with service connected disabilities*. Care or services not previously authorized were rendered to a veteran in need of such care or services:
(1) For an adjudicated service-connected disability;
 . . . . and
(b) *In a medical emergency*. Care and services not previously authorized were rendered in a medical emergency of such nature that delay would have been hazardous to life or health, and
(c) *When Federal facilities are unavailable*. VA or other Federal facilities were not feasibly available, and an attempt to use them beforehand or obtain prior VA authorization for the services required would not have been reasonable, sound, wise, or practicable, or treatment had been or would have been refused.

38 C.F.R. § 17.120 (a), (b), (c) (2005) (italics in original).

C. Entitlement to Reimbursement for CRC

In the instant case, the Board denied the appellant's claim for reimbursement for the costs of CRC because it found the language of section 1730(b)(3) unequivocal. R. at 7. The Board concluded that "although the Secretary may refer a veteran to a CRC facility, neither the United States government nor the Department of Veterans Affairs is responsible for the cost of CRC provided to a veteran." R. at 6; *see* 38 U.S.C. § 1730(b)(3).

The Court reviews questions of statutory interpretation de novo. *See* 38 U.S.C. § 7261(a)(1); *Cacatian v. West*, 12 Vet.App. 373, 376 (1999). The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.*

Congress unambiguously addressed VA's responsibility for the payment of CRC costs in 38 U.S.C. § 1730(b)(3) when it stated that "[p]ayment of the charges of a [CRC] facility *for any care or service* rendered to a veteran whom the Secretary has referred to that facility . . . *is not* the responsibility of the United States or of the Department." (emphasis added). Similar to its statutory counterpart, 38 C.F.R. § 17.63(k)(1), promulgated by the Secretary, also provides that "[p]ayment for the charges of [CRC] is not the responsibility of the United States Government or VA." The plain language of section 1730(b)(3) is devoid of any intent to provide an exception, and the Secretary did not provide for one in his implementing regulations. *See Gardner v. Derwinski*,

1 Vet.App. 584, 587-88 (1991) ("Where a statute's language is plain, and its meaning clear, no room exists for construction."); *see also* 38 C.F.R. § 17.61–.68 (2005). As the expressed intent of Congress was clearly and unambiguously set forth in section 1730(b)(3), and the Secretary's regulations are a reasonable interpretation of that statute, the Court need not, and indeed cannot interpret further. Accordingly, the Court holds that under section 1730(b)(3), VA need not reimburse the appellant for his CRC costs.

To the extent that appellant seeks reimbursement for CRC costs under § 17.120, that argument is similarly without merit. That regulation implements section 1728 of title 38, U.S. Code, which permits the Secretary to prescribe regulations to reimburse veterans entitled to *hospital care or medical services* under chapter 17 for the reasonable value of such care or services under certain circumstances. *See* 38 U.S.C. § 1728; *Bellezza v. Principi*, 16 Vet.App. 145, 149 (2002) (recognizing that "[b]y definition, every veteran seeking benefits under 38 U.S.C. § 1728 and 38 C.F.R. § 17.120 received medical care or services from a non-VA physician"). A veteran who seeks reimbursement pursuant to section 1728 for medical treatment related to a service-connected disability must show that the care or services were provided in a medical emergency of such nature that delay would have been hazardous to life or health, and that VA or other Federal facilities were not feasibly available. *See* 38 U.S.C. § 1728; *see also Malone v. Gober*, 10 Vet.App. 539, 542-44 (1997).

On the other hand, Congress specifically defined the term "community residential care" as "a facility that provides *room and board and such limited personal care* for and supervision of residents as the Secretary determines, in accordance with regulations prescribed under this section, are necessary for the health, safety, and welfare of residents." 38 U.S.C. § 1730(f) (emphasis added). Consistent with Congress's intent, the Secretary determined that referral to a CRC facility is available to those veterans that do not need hospital or nursing home care, but who are unable to live independently. *See* 38 C.F.R. § 17.61(b).

Moreover, section 1730(b)(3) specifically relieves VA of the responsibility to pay the costs of CRC "*for any care or service* provided to a veteran whom the Secretary has referred" to a CRC facility. *See* 38 U.S.C. § 1730(b)(3) (emphasis added). Accordingly, under the canon of interpretation that the more specific trumps the general, we hold that section 1730(b)(3) controls, and

therefore, the fact that the appellant was referred to the CRC facility for medication compliance monitoring is immaterial. *See Kowlaski v. Nicholson*, 19 Vet.App. 171, 177 (2005) (citing *Zimick v. West*, 11 Vet.App. 45, 51 (1998) ("'[A] more specific statute will be given precedence over a more general one . . . .'"(quoting *Busic v. United States*, 446 U.S. 398, 406 (1980)))). Stated another way, the Court holds that, regardless of the underlying care or service provided to a veteran at the CRC facility, Congress specifically provided that the United States and VA are not responsible for the cost of such care or service. The appellant cannot circumvent Congress's clearly expressed intent.

Although the Board erred by concluding that the appellant was not entitled to reimbursement under § 17.120 because his placement in the CRC facility was not due to a medical emergency, this error is not prejudicial because the Board nevertheless correctly concluded under 38 U.S.C. § 1730 (b)(3) that there was no legal basis for reimbursement of costs incurred at the CRC facility. *See* 38 U.S.C. § 7261(b)(2) (providing that the Court shall take due account of the rule of prejudicial error); *see also Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004). Thus, even assuming, as the appellant contends, that the Board failed to provide an adequate statement of reasons or bases for denying reimbursement under § 17.120, that error is necessarily nonprejudicial. *See* 38 U.S.C. §§ 7104(d)(1), 7261(b)(2); *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (stating that judicial review of an agency's action should not be converted into a "ping-pong game" where remand is "an idle and useless formality"); *Mayfield v. Nicholson*, 19 Vet.App. 103, 129 (2005) (where review is not hindered by any reasons-or-bases deficiency, a remand for a reasons-or-bases error would be of no benefit to the appellant and would therefore be pointless); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (concluding that where evidence is overwhelmingly against the claim, remand for reasons-or-bases deficiency would be superfluous).

We have also considered the appellant's argument for remand on the basis that the Board failed to consider 38 C.F.R. § 17.63(k)(2), which provides in pertinent part, that "[t]he resident or an authorized representative and a representative of the community must agree upon the charge and payment procedures for [CRC]." In light of the Court's holding that 38 U.S.C. § 1730(b)(3) unequivocally relieves VA from paying any costs incurred by a veteran at a CRC facility, the Court finds this argument unpersuasive.

### D. VCAA Notice Compliance

The Secretary is required to inform the claimant of the information and evidence not of record (1) that is necessary to substantiate the claim, (2) that the Secretary will seek to obtain, if any, and (3) that the claimant is expected to provide, if any. *See* 38 U.S.C. § 5103(a); *Mayfield*, 19 Vet.App. at 110 (citing *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002)); 38 C.F.R. § 3.159(b) (2005). The Secretary is also required to "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." *Mayfield*, 19 Vet.App. at 110 (quoting 38 C.F.R. § 3.159(b)(1)); *see also Pelegrini v. Principi*, 18 Vet.App. 112, 121 (2004). The notice required under statutory section 5103(a) and regulatory § 3.159(b) must be provided upon receipt of a complete or substantially complete application for benefits and prior to an initial unfavorable decision on a claim by an agency of original jurisdiction such that the claimant has a "meaningful opportunity to participate effectively in the processing of his or her claim." *Mayfield*, 19 Vet.App. at 120-21. The Secretary's failure to inform the appellant of what evidence is necessary to substantiate his claim is presumptively prejudicial. *See id*. at 122. Any other statutory section 5103(a) or regulatory § 3.159(b) notice error, including an error in the timing of the notice, is not remandable error unless the appellant "identif[ies], with considerable specificity, how the notice was defective and what evidence the appellant would have provided or requested the Secretary to obtain . . . had the Secretary fulfilled his notice obligations; further, an appellant must also assert, again with considerable specificity, how the lack of that notice and evidence affected the essential fairness of the adjudication." *Id*. at 121.

Neither party contends that the appellant was provided with VCAA-compliant notice. *See* Br. at 7-12; Sec'y Br. at 7-8. Rather, the disposition of this matter turns on whether the failure to provide adequate VCAA notice was prejudicial to the appellant. *See* 38 U.S.C. § 7261(b)(2); *see also Conway* and *Mayfield*, both *supra*. The law is well settled that the failure to provide VCAA notice is nonprejudicial error, "[w]here the facts averred by a claimant cannot conceivably result in any disposition of the appeal other than affirmance of the Board decision." V*aliao*, 17 Vet.App. at 231-32); *see also Short Bear v. Nicholson*, 19 Vet.App. 341, 344 (2005) (notice error nonprejudicial where facts averred could not result in an award of benefits); *Mayfield,* 19 Vet.App. at 121 (lack of prejudice may be established by demonstrating that a benefit could not possibly have been awarded

as a matter of law); *Mason*, 16 Vet.App. at 132 ("[B]ecause the law as mandated by statute, and not the evidence, is dispositive of this claim, the VCAA is not applicable."); *Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994) (where law, and not evidence, is dispositive, claim should be denied or appeal terminated because of lack of legal merit); *Soyini*, 1 Vet.App. at 546 ("[S]trict adherence [to the law] does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case. Such adherence would result in this Court's unnecessarily imposing additional burdens on the BVA . . . with no benefit flowing to the veteran.").

In light of our holding that section 1730(b)(3) unequivocally relieves VA of the responsibility to pay for any care or service provided to the appellant at the CRC facility, we further hold that the failure to provide VCAA-compliant notice was nonprejudicial error, because the law, and not the evidence, is dispositive of the appellant's claim. *See Short Bear*, *Mayfield*, *Valiao*, *Mason*, and *Sabonis*, all *supra.* Accordingly, the Court also finds unpersuasive the appellant's emphasis on the Board Chairman's statement at the May 2003 hearing that there *may be* VCAA deficiencies and the appellant's subsequent refusal to waive any such deficiencies; any reliance or expectation by the appellant that he may receive VCAA-compliant notice is not prejudicial because there could have been no further development that could have lead to an award of benefits. *See Short Bear*, *Mayfield*, *Valiao*, *Mason*, and *Sabonis*, all *supra.*

### E. Special Monthly Compensation

The appellant also argues that a remand is necessary because the Board failed to consider all relevant regulatory provisions when it failed to consider whether he raised a claim for SMC for aid and attendance. Br. at 13-16. The Secretary argues that a claim for SMC was not raised in a manner that would confer jurisdiction on this Court to address the issue. Sec'y Br. at 9. The Court always has jurisdiction to assess its own jurisdiction, and therefore, we will first address the question of our jurisdiction. *See Smith v. Brown*, 10 Vet.App. 330, 332 (1997) ("'[A]ny statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits. . . .'" (quoting *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) (emphasis in *Barnett*))).

Section 7252 of title 38, U.S. Code, provides in relevant part that the Court "shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate." 38 U.S.C. § 7252(a). The Court's jurisdiction "is premised on and defined by the Board's decision

concerning the matter being appealed," and when the Board has not rendered a decision on a particular issue, the Court generally has no jurisdiction under section 7252(a) to consider the merits of the matter. *Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998); *see also Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000).

However, even when there is no Board decision on a claim, we have jurisdiction over that claim if there is a reference to it in an NOD, or if it was reasonably raised to the Board. *See Ledford*, *supra*. Thus, in addressing the Board's obligation to adjudicate claims reasonably raised to it, we have held that

> the Board is required to adjudicate all issues reasonably raised by a liberal reading of the appellant's substantive appeal, including all documents and oral testimony in the record prior to the Board's decision. *See Solomon v. Brown*, 6 Vet.App. 396, 402 (1994); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991). "Where such review of all documents and oral testimony reasonably reveals that the claimant is seeking a particular benefit, the Board is required to adjudicate the issue of the claimant's entitlement to such a benefit or, if appropriate, to remand the issue to the [VARO] for development and adjudication of the issue; however, *the Board may not simply ignore an issue so raised*." *Suttmann v. Brown*, 5 Vet.App. 127, 132 (1993). On the other hand, the Board is not required to anticipate a claim for a particular benefit where no intention to raise it was expressed. *See Talbert v. Brown*, 7 Vet.App. 352, 356-57 (1995) (holding that the BVA is not required to do a "prognostication" but to review issues reasonably raised by the substantive appeal).

*Brannon v. West*, 12 Vet.App. 32, 34 (1998) (emphasis added). VA is further obligated, with respect to all pro se pleadings, to give a sympathetic reading to the veteran's filings. *Andrews v. Nicholson*, 421 F.3d 1278, 1282 (Fed. Cir. 2005) (citing *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004)). This requires VA to "determine all potential claims raised by the evidence, applying all relevant laws and regulations." *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001). Hence, the existence of our jurisdiction turns on whether the claim was reasonably raised to the Board. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the question of whether a sympathetic reading of prior filings raises an informal claim for benefits is essentially a factual inquiry. *See Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004) (recognizing that the interpretation of veteran's filings was a factual inquiry outside Federal Circuit's jurisdiction).

In this case, the record reveals that while the appellant's appeal was pending at the Board, on October 17, 2003, the Board received Dr. Marder's examination report, submitted on VA Form 21-

2680, Examination for Housebound Status or Permanent Need for Regular Aid and Attendance. R. at 195-97. Dr. Marder certified that the appellant required the daily personal health care services of a skilled provider without which he would require hospital, nursing home, or other institutionalized care. R. at 196. This report was submitted as an attachment to the appellant's motion for expedited consideration by the Board. R. at 190, 192, 199. However, the appellant had also requested that the report be incorporated into the evidentiary record. R. at 190. His motion for expedited proceedings was granted in November 2003 and the Board issued its decision one month later. R. at 201, 1-7. In its decision, the Board did not discuss this evidence, which had been received two months prior to its decision, nor did it provide any discussion as to whether Dr. Marder's examination report constituted an informal claim to reopen a claim for SMC for aid and attendance. *See* 38 C.F.R. §§ 3.157(b), 3.155(a), (c), 3.156(a) (2005).

Based on the facts of this case, we find that there is an evidentiary factual basis to remand this matter to the Board. The resolution of this jurisdictional issue involves specific factual determinations regarding whether the appellant's submissions and arguments reasonably raised an informal claim to reopen a claim for SMC for aid and attendance; these findings are best for the Board to make in the first instance, and therefore, we conclude that it is premature for the Court to address this matter. *See Hensley v. West*, 212 F.3d 1255, 1263-64 (Fed. Cir. 2000) (court of appeals may remand if it determines that lower tribunal failed to make finding of fact essential to decision); *Wanless v. Principi*, 18 Vet.App. 337, 337 (2004) (per curiam order); *see also* 38 U.S.C. § 7104(d)(1).

In reaching this decision, we note that it is consistent with the Federal Circuit's recent decision in *Andrews*, which held that "when the VA violates *Roberson* by failing to construe the veteran's pleadings to raise a claim, such a claim is not considered unadjudicated but the error instead is properly corrected through a [clear and unmistakable error (CUE)] motion." 421 F.3d at 1284. It follows that if the error is raised by the appellant on direct appeal, then it can be recognized and remedied at this point. It would be illogical and unfair to require the appellant to wait until the Board decision is final and then face the high burden of proving CUE when any other error can be addressed immediately and more favorably when raised in a timely manner. *Cf. May v. Nicholson*,

19 Vet.App. 310, 317 (2005) (refusing to put "the appellant at a great disadvantage" simply because he filed a premature CUE motion prior to his timely motion to reconsider the same Board decision).

If, on remand, the Board concludes that there is no reasonably raised claim over which it has jurisdiction, the appellant is free to appeal that decision. *See Mintz v. Brown*, 6 Vet.App. 277, 281 (1994) ("[T]he Secretary's refusal to exercise jurisdiction . . . clearly presents a case or controversy within the purview of the Court's jurisdiction."). On remand, the appellant is free to submit additional evidence and argument and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' briefs, the Board's December 9, 2003, decision that denied the appellant's claim for reimbursement for costs incurred at a CRC facility is AFFIRMED; and the matter of whether an informal claim to reopen a previously denied claim for SMC for aid and attendance had been presented is REMANDED for further proceedings consistent with this opinion.