Citation Nr: 1121862 
Decision Date: 06/06/11 Archive Date: 06/20/11

DOCKET NO. 08-33 454 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to service connection for recurrent herpes simplex type II.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARINGS ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Bernard T. DoMinh, Counsel


INTRODUCTION

The Veteran served on active duty from May 1951 to March 1960.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2007 rating decision by the Montgomery, Alabama, Regional Office (RO) of the Department of Veterans Affairs (VA). 

During the course of the appeal, the Veteran was provided with the opportunity to present oral testimony in support of his claim before a Decision Review Officer (DRO) in September 2008 and the undersigned in August 2010. Both hearings were conducted at the RO and the transcripts of these hearings have been obtained and associated with the Veteran's claims file for consideration by the Board. 

In favorable response to the Veteran's motion, which was submitted to the Board at the August 2010 hearing, the undersigned has advanced this appeal on the Board's docket pursuant to 38 U.S.C.A. § 7107(a)(2) (West 2002); 38 C.F.R. § 20.900(c) (2010).

In September 2010, the Board remanded the case to the RO via the Appeals Management Center (AMC) in Washington, D.C., for additional evidentiary development, including providing the Veteran with a VA medical examination so as to obtain a nexus opinion addressing the issue on appeal. The requested examination was duly performed in January 2011 and a nexus opinion was obtained, pursuant to the Board's remand instructions. Thusly, there is no further development in this regard that is required, as the RO has substantially complied with the September 2010 remand. [See Stegall v. West, 11 Vet. App. 268 (1998): A remand by the Board confers on a veteran or other claimant the right to VA compliance with the remand order and imposes on the Secretary a concomitant duty to ensure compliance with the terms of such an order. See also Dyment v. West, 13 Vet. App. 141, 146-47 (1999): Exact compliance with the directives of a Board remand are not necessarily required if the purpose of the remand has been met, such that the RO's post-remand development is in substantial compliance with the Board's remand instructions.]

Following the evidentiary development ordered by the Board, the RO readjudicated the Veteran's claim in an April 2011 rating decision/supplemental statement of the case and confirmed the denial of service connection for recurrent herpes simplex type II. The case was thereafter returned to the Board in May 2011 and the veteran now continues his appeal.


FINDING OF FACT

Herpes simplex type II did not have its onset during active military service, and is not otherwise related to service.


CONCLUSION OF LAW

Herpes simplex type II was not incurred in active duty. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board notes at the outset that, in accordance with the Veterans Claims Assistance Act of 2000 (VCAA), VA has an obligation to notify claimants what information or evidence is needed in order to substantiate a claim, as well as a duty to assist claimants by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A and 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010); see also Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002).

With respect to the service connection claim on appeal, generally, the notice requirements of a service connection claim have five elements: veteran status, existence of a disability, a connection between the veteran's service and the disability, degree of disability, and effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006). VCAA notice must also: (1) inform the claimant about the information and evidence necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; (3) inform the claimant about the information and evidence the claimant is expected to provide; and (4) request that the claimant provide any evidence in his possession that pertains to the claim. See 38 U.S.C. § 5103(a); 38 C.F.R. § 3.159(b); Beverly v. Nicholson, 19 Vet. App. 394, 403 (2005) (outlining VCAA notice requirements). (38 C.F.R. § 3.159(b) has since been revised and the requirement that VA request that the claimant provide any evidence in his possession that pertains to the claim was removed from the regulation.)

The service connection claim decided herein stems from the Veteran's application for VA compensation for this disability, which was filed in early March 2007. A VCAA notice letter addressing the applicability of the VCAA to this claim and of VA's obligations to the Veteran in developing the claim was dispatched to the Veteran in late March 2007, which addressed the matter and satisfied the above-described mandates, as well as the requirements that the Veteran be informed of how VA calculates degree of disability and assigns an effective date for the disability, as prescribed in Dingess v. Nicholson, 19 Vet. App. 473 (2006). The Board finds that there is no timing of notice defect with respect to the March 2007 VCAA notice letter, as it preceded the initial adjudication of this claim in the June 2007 RO rating decision now on appeal. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

VA also has a duty to assist the Veteran in obtaining evidence necessary to substantiate the claim. 38 U.S.C.A. § 5103A(a) ("The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the . . . claim"). This duty includes assisting the Veteran in obtaining records and providing medical examinations or obtaining medical opinions when such are necessary to make a decision on the claim. 38 U.S.C.A. § 5103A(b), (c), (d) (setting forth Secretary's various duties to claimant).

VA informed the Veteran of its duty to assist in obtaining records and supportive evidence. In this regard, the Board observes that the Veteran's service treatment records and post-service private medical records identified by the claimant as being relevant have been obtained and associated with the claims file. Included in these are records pertaining to his diagnosis and treatment for herpes from his private physician, Harold Cox, M.D., for the period from 2002 - 2009. An attempt by VA to obtain private medical records from Kings County Hospital Center in Brooklyn, New York, which were identified as relevant, was unsuccessful. In a May 2007 letter, this private hospital informed VA that the requested records were destroyed, pursuant to state law. The Board remanded the case in September 2010 to provide the Veteran with a VA medical examination in order to obtain a nexus opinion, based on the evidence of record, addressing the likelihood that the Veteran's recurrent herpes simplex type II was incurred in service, including whether or not herpes was misdiagnosed as gonorrhea in service. As previously stated, there has been substantial compliance by the RO with the instructions in the September 2010 remand and the Board is satisfied that the evidence is sufficiently developed for appellate adjudication with respect to the issue of entitlement to service connection for recurrent herpes simplex type II. The Board notes that the Veteran and his representative have been provided with ample opportunity to submit additional evidence in support of the claim up to the time when the case was received by the Board in May 2011, and that neither the Veteran nor his representative has indicated that there are any other outstanding relevant post-service medical records or other pertinent evidence that must be considered in this current appeal with respect to the issue decided herein. 

The Board observes that the January 2011 VA examination provided a nexus opinion addressing the relationship between the Veteran's military service and his present diagnosis of recurrent herpes simplex type II, as well as addressing the question of whether or not this sexually transmitted disease was misdiagnosed as gonorrhea during active duty. These opinions have been supported by medical rationales based on the examiner's review of the Veteran's relevant clinical history. Therefore, the Board finds that the January 2011 VA medical examination report (and the clinical findings, nexus opinions, and supportive rationales presented therein) is adequate for purposes of adjudicating the claim for VA compensation for recurrent herpes simplex type II. See Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

Based on the foregoing, the Board finds that the VA fulfilled its VCAA duties to notify and to assist the Veteran in the evidentiary development of his service connection claim decided herein, and thus no additional assistance or notification is required. The Veteran has suffered no prejudice that would warrant a remand, and his procedural rights have not been abridged. See Bernard v. Brown, 4 Vet. App. 384 (1993). The evidentiary development undertaken by the RO is in substantial compliance with the instructions of the September 2010 Board remand; thus, no further remand for corrective development is required. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). The Board will therefore proceed with the adjudication of this appeal.

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Service connection may be established for disability resulting from injury or disease incurred in service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. In general, the veteran is presumed to have been sound upon entry to active service when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by such service. See 38 U.S.C.A. § 1111; 38 C.F.R.§ 3.304(b). Service connection connotes many factors, but basically, it means that the facts, as shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service. A determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease in service. See Pond v. West, 12 Vet. App. 341 (1999); Hickson v. West, 12 Vet. App. 247, 253 (1999).

For the showing of a chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." 38 C.F.R. § 3.303(b) (2010). Continuity of symptomatology is required where the disorder noted during service is not shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. Id. This can be established by the Veteran's own lay statements, and those of lay witnesses, if they pertain to externally observable symptoms, or to perceivable symptoms of a claimed disability that are within their competence to report. [See Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007): The absence of contemporaneous medical evidence is not an absolute bar where lay evidence is credible and ultimately competent. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. The Board cannot determine that lay evidence lacks credibility solely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006). The Board may, however, consider a lack of contemporaneous medical evidence as one factor in determining the credibility of lay evidence. Id. at 1337.]

As relevant, the Veteran's service treatment records show that on entrance examination in May 1951, his genitourinary system was normal and he denied having any history of venereal disease. Thereafter, the records show treatment on multiple occasions between October 1951 - July 1957 for individual episodes of gonorrhea, with associated symptoms of acute urethritis and purulent penile discharge. During treatment for this venereal disease, the presence of gonococcus bacteria was confirmed through bacterial culture testing. Treatment with antibiotics were successful in resolving the episodes of gonorrhea. Otherwise, the service medical records show treatment in May 1953 for acute urethritis that was non-venereal in etiology, with no gonococcus bacteria present on culture smear testing, and treatment in September 1958 for a sebaceous cyst on the Veteran's penis. On separation examination in February 1960, the Veteran's genitourinary system was normal and while a history of gonorrhea was noted in the report, no recurrence of this venereal disease was clinically demonstrated. The Veteran was separated from active service in March 1960.

Afterwards, 37 years later, in March 2007, the Veteran filed a claim for VA compensation for recurrent herpes simplex type II. Post-service medical records from the Veteran's private physician, Harold Cox, M.D., show that the Veteran was diagnosed and treated for recurrent episodic flare-up of herpes simplex type II, with associated symptoms that included penile lesions, for which he was prescribed the anti-herpes medication Acyclovir as early as June 2002. Although Dr. Cox did not present an actual nexus opinion linking this sexually transmitted disease to service, and the Veteran testified at his August 2010 hearing that he was never actually told by his physician that his herpes was related to military service, a February 2006 treatment note from Dr. Cox states, "[The Veteran] is having flare-up of his herpes. He got this when in Korea." However, parsing this statement, no actual definitive words linking the herpes to military service is actually expressed, although it is implied as there is no indication that the Veteran was ever in Korea after leaving service, and it is evident that Dr. Cox is merely recording the Veteran's personal account of his own medical history and his perception of when his herpes symptoms began. (The claims file also includes a handwritten unsigned statement appearing on the back of one of Dr. Cox's medical records stating, in pertinent part, "herpes 2002 if not before." Assuming that this statement is, in fact, a clinical opinion from Dr. Cox, it still does not expressly associate the Veteran's herpes with his military service.) 

At RO hearings before a DRO and the undersigned in September 2008 and August 2010, respectively, the Veteran testified, in pertinent part, that he believed that he developed penile lesions consistent with herpes symptoms during active duty, and that because herpes was not a clinically recognized syndrome by medical science in the 1950's, when he was treated for venereal disease in active duty, he contended that what was diagnosed and treated as gonorrhea in service was, in fact, herpes simplex type II, and that his herpes was misdiagnosed as gonorrhea. The Veteran further testified that he experienced what he perceived as recurrent episodes of herpetic genital lesions and related symptoms that continued from the time of his military service to the present day. He reported that he self-treated his penile lesions as best that he could in the years following service, until finally receiving actual medical treatment by a private physician in 1990. 

The report of a January 2011 VA examination shows that the Veteran's claims file and pertinent medical history were reviewed by the examining physician, including the Veteran's historical account of onset of herpetic-type genital symptoms in service with continuity of this symptomatology to the present. Based on this review and examination of the Veteran, the VA physician determined that there was no evidence of gonorrhea or active herpes on clinical assessment, with a diagnosis of herpes genitalia per the Veteran's documented medical history. The examiner presented the following nexus opinion:

The C-file was reviewed and the patient was seen multiple times thru the VD clinic for gonorrhea (GC). On two of those ocassions [sic],. . . the patient was treated for a urethral discharge and a GC smear was performed and positive for gonorrhea. The patient was then treated with penicillin. There was no documentation of painful vesicles to the glans penis or diagnosis of herpes. Based on review of the medical records, the patient was diagnosed with GC, based on findings of a urethral smear, and treated appropriately. When the patient may have contracted herpes is a matter of speculation.

Therefore, it is less likely as not that the patient's current herpes was caused by, or a result of, or etiologically related to his previous military service. There was no evidence of misdiagnosis related to the treatment rendered during active duty. The patient was noted to be in service for approx[imately] 10 years and is currently 82 years old. There is a 30 - 40 year time span that the patient could have likely contracted herpes after military service.

The Board has considered the evidence discussed above and finds that the weight of the evidence is against finding, as a factual matter, that the Veteran's recurrent herpes simplex type II is related to his military service. The VA physician who examined the Veteran and reviewed his service medical records in August 2010 found no objective documented evidence of actual penile vesicles or other symptoms consistent with herpes during active duty, notwithstanding the Veteran's lay assertion that such symptoms were present in service. Furthermore, the Veteran's contention that his current herpes was misdiagnosed as gonorrhea in service is not substantiated by the clinical record, as the presence of gonococcus bacteria was confirmed on objective testing during service, as noted by the VA examiner in his August 2010 report. The VA physician expressly found it less likely as not that the Veteran's herpes was incurred in service based on the pertinent medical history. 

The Board notes that there is nothing in the record that indicates that the Veteran is a trained medical professional. Therefore, as a layperson, he is not competent to self-diagnosis his genitourinary symptoms in service as actually being representative of herpes, much less provide an opinion and commentary regarding its etiology and relationship to active service. His statements in this regard are not entitled to any probative weight. See Layno v. Brown, 6 Vet. App. 465 (1994); Espiritu v. Derwinski, 2 Vet. App. 492, 494 (1992). Furthermore, his own personal belief in the existence of a relationship between his herpes and his military service, no matter how sincere, is not probative of a nexus to service given that the matter of the identification of a specific venereal disease, which from the actions of treating clinicians in the file, appears to involve testing to determine which organism is involved, is clearly not within the realm of medical expertise. See generally, Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). This is particularly true where, as here, the Veteran has a documented history of contracting several types of venereal diseases. 

Although the Board acknowledges the Veteran's competency to report his observable symptoms for purposes of establishing onset in, and continuity since service, the Board finds that Veteran's historical account of onset of penile vesicles and symptoms in service and since service that are identical to his currently diagnosed herpes simplex is not credible for purposes of establishing a link between herpes and his period of active duty. As previously noted, the Veteran's genitourinary system was normal and he had no active gonorrhea or any other venereal disease on service separation examination in 1960. Thereafter, no medical records objectively indicating a diagnosis of herpes is shown any earlier than June 2002, when a private medical record reflects that he was prescribed the anti-herpes medication Acyclovir. Even if he is correct that herpes was not a known disease in the 1950's, the record is actually silent for any reference to herpes until more than 32 years following the Veteran's separation from service, and medical science undoubtedly learned of genital herpes long before 2002. The long gap between service and the first reference to herpes contradicts and weighs heavily against the credibility of his account of having active recurrent herpes symptoms since service. [See Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed. Cir. 2000): A lengthy period without treatment of the claimed disability is evidence against a finding of continuity of symptomatology, and it weighs heavily against the claim. Service incurrence may be rebutted by the absence of medical treatment of the claimed condition for many years after service.] Therefore, inasmuch as Dr. Cox's private treatment note of February 2006 states that the Veteran, by history, acquired herpes in Korea (and thusly, by implication, in service), as the Board has found the Veteran's account in this regard to be lacking credibility for purposes of establishing a link between his herpes and service, Dr. Cox's historical notation, predicated as it is on the Veteran's discredited account, has little probative weight as clinical evidence establishing a nexus with active duty. 

In view of the foregoing discussion, the Board must deny the Veteran's claim of entitlement to service connection for recurrent herpes simplex type II. Because the evidence in this case is not approximately balanced with respect to the merits of this claim, the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2010); Ortiz v. Principi, 274 F.3d 1361, 1364, 1365 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for recurrent herpes simplex type II is denied.



____________________________________________
Thomas H. O'Shay
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs