Citation Nr: 1504669 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 09-35 173 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUE

Entitlement to service connection for diabetes mellitus, Type II, to include as a result of in-service exposure to tactical chemical herbicides.


REPRESENTATION

Appellant represented by: Peter J. Meadows, Attorney-at-Law


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Bernard T. DoMinh, Counsel

INTRODUCTION

The Veteran served on active duty in the United States Navy from April 1966 to February 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office in St. Petersburg, Florida, which denied the Veteran's claim of entitlement to service connection for Type II diabetes mellitus, to include as a result of in-service exposure to tactical chemical herbicides. Jurisdiction over the case was subsequently transferred to the VA Regional Office in St. Paul, Minnesota (RO), which is now the agency of original jurisdiction (AOJ).

In September 2010, the Veteran testified at a videoconference hearing conducted before the undersigned Veterans Law Judge. A transcript of the testimony has been associated with the claims file for the Board's review and consideration. 

In November 2010, the Board denied the claim for service connection for diabetes mellitus, Type II, to include as secondary to in-service exposure to tactical chemical herbicides. The Veteran appealed that denial to the United States Court of Appeals for Veterans Claims (Court). In June 2011, the Court vacated the Board's decision and remanded the matter to the Board for proceedings consistent with the Court remand. 

In May 2012, the Board remanded the appeal to the RO for further development. After completion of the requested actions, and a continued denial of the Veteran's claim, the RO returned his appeal to the Board. In March 2013, the Board denied the claim for VA compensation for Type II diabetes mellitus. The Veteran appealed that denial to the Court, who, in May 2014, vacated the Board's decision and remanded the matter to the Board for proceedings consistent with the Court remand. 

In December 2014, the Veteran, via his attorney, submitted additional evidence in support of his claim, accompanied by a waiver of first review by the AOJ.

FINDINGS OF FACT

1. The Veteran did not have in-country ("foot-on-land") service within the territorial confines of the Republic of Vietnam or service on the inland waterways of Vietnam. 

2. The Veteran was not exposed to tactical chemical herbicides while drinking and bathing in rainwater during Vietnam War Era shipboard naval service while his vessel was operating in ocean waters off the coast of the Republic of Vietnam.

3. The Veteran's Type II diabetes mellitus did not have its onset during active service or within one year thereafter, and it is not related to his period of active duty. 

CONCLUSION OF LAW

Type II diabetes mellitus was not incurred in or aggravated by active service, and may not be presumed to have been incurred in service. 38 U.S.C.A. §§ 1110 , 5107 (West 2014); 38 C.F.R. §§ 3.303 , 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance of Act of 2000 (VCAA).

With respect to the service connection claim decided herein, VA has met all statutory and regulatory notice and duty to assist provisions, or has otherwise demonstrated that there is no prejudice to the Veteran for any notice deficits. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2014).

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. See 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2014); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the Court held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide.

Here, to meet the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b), VCAA notice must: (1) inform the claimant about the information and evidence necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. Beverly v. Nicholson, 19 Vet. App. 394, 403 (2005) (outlining VCAA notice requirements). Proper VCAA notice must also inform the claimant as to how VA assesses degree of disability and assigns a disability rating and the effective date of a compensation award, as prescribed in Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The current appeal stems from the Veteran's original claim for service connection for Type II diabetes mellitus (to include as due to exposure to tactical chemical herbicides), which was received by VA in September 2006. In response to his claim, a VCAA notice letter was dispatched to the Veteran in November 2006, which fully complied with the aforementioned notice requirements. Subsequent correspondence, dated in June 2012, provided further notice regarding the theory of service connection due to exposure to tactical chemical herbicides for Vietnam War Era veterans, in compliance with the instructions of a May 2012 Board remand. Inasmuch as complete notice was not provided until after the initial adjudication of the claim in the March 2009 rating decision now on appeal before the Board, this timing of notice defect is rectified by the subsequent readjudication of the claim by the AOJ in the rating decision/supplemental statement of the case dated in October 2012. Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

The Board also concludes VA's duty to assist has been satisfied in the course of the evidentiary and procedural development that was undertaken during the appeal. The Veteran's service personnel records, showing the dates and locales of his duty assignments during active duty, and his service medical records and pertinent post-service private and VA medical records addressing the state of his endocrine system and onset of his Type II diabetes mellitus have been obtained, including the April 2012 nexus opinion of his private treating physician, Gary L. Winfield, M.D., and the October 2014 nexus opinion of a treating VA physician. These have been obtained with waivers of first review by the AOJ, as appropriate. Additional oral testimony and written statements for this time period from the Veteran regarding historical accounts of the history of his relevant symptoms and alleged in-service exposure to tactical chemical herbicides (colloquially known as "Agent Orange") were also obtained and associated with the evidence. Otherwise, since the time of the return of the Veteran's claims file to Board's custody in May 2014, the appellant has not referenced outstanding records that he wanted VA to obtain or that he felt were relevant to his VA compensation claim. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. Green v. Derwinski, 1 Vet. App. 121 (1991); Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2014). As previously stated above, the aforementioned nexus opinions have been associated with the Veteran's claims file and will be discussed in detail below in the adjudication of the claim on the merits.

VA will provide a medical examination or obtain a medical opinion where there is: (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) evidence establishing that an event, injury, or disease occurred in service; (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with a veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence to make a decision on the claim. McLendon v. Nicholson, 20 Vet. App. 79, 82-83 (2006); 38 U.S.C.A. § 5103A(d) (West 2014); 38 C.F.R. § 3.159(c)(4) (2014).

Although an actual VA examination for a nexus opinion was not obtained in connection with the claim, the Board finds that it is unnecessary to obtain one in order to render a decision on the claim. As will be discussed in the decision below, the medical opinions of record suggesting that the Veteran's current diabetes mellitus is due to Agent Orange exposure from drinking and bathing in rainwater while serving aboard a naval vessel operating offshore from Vietnam are predicated on a factual premise that the Board, as finder of fact, rejects outright; as such, it does not constitute competent medical evidence of record suggesting a link between the Veteran's claimed disability and his military service. Furthermore, no continuity of diabetes symptomatology has been objectively demonstrated. The Veteran's service treatment records, as well as his post-service treatment records for over 25 years following his military discharge, are completely silent as to any complaints or diagnoses of diabetes mellitus or any readings of elevated blood sugar. Mense v. Derwinski, 1 Vet. App. 354, 356 (1991). Additionally, the Veteran has testified that his diabetes was first diagnosed no earlier than 1996 (almost 26 years after his separation from active naval service), and the medical evidence of record does not present an objective diagnosis of Type II diabetes mellitus, as a matter of clinical history, prior to 1998. Thusly, a VA medical examination addressing the etiology of this condition is not required as the case has not met the test prescribed by the Court in McLendon v. Nicholson, 20 Vet. App. 79 (2006).

In September 2010, the Veteran, accompanied by his representative, appeared at the RO to present oral testimony at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of this hearing has been obtained and associated with the claims file for the Board's review and consideration. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Decision Review Officer or Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) explaining fully the issues and (2) discussing the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

At the September 2010 Board hearing, the presiding Veterans Law Judge's questions and the oral testimony of the Veteran focused on the elements necessary to substantiate the Veteran's claim of entitlement to service connection for Type II diabetes mellitus, to include as secondary to Agent Orange exposure. Specifically, questions asked of the Veteran as to the approximate dates of his diabetic symptoms went to presumptive, as well as direct (continuity of symptomatology), service connection. See transcript of September 7, 2010 Board hearing. Thus, the Veterans Law Judge presiding over the September 2010 videoconference hearing has substantially fulfilled her obligations as required under 38 C.F.R. § 3.103(c)(2) (2014). Bryant, supra. 

Based on the foregoing, the Board finds that the VA substantially fulfilled its VCAA duties to notify and to assist the Veteran in the evidentiary development of his claim for service connection for Type II diabetes mellitus (including as due to Agent Orange exposure) decided herein and thus no additional assistance or notification is required in this regard. The Board also finds that the development conducted pursuant to its latest remand of May 2012 is in substantial compliance with the Board's directives contained within. Specifically, in its May 2012 remand, the Board requested that the RO provide the Veteran with additional notice as to the information and evidence necessary to support his claim on both a presumptive and direct basis, pursuant to Bryant v. Shinseki, 23 Vet. App. 488 (2010), and obtain any additional evidence, including records from the Tampa VA Medical Center (VAMC), Palo Alto VAMC, and St. Cloud VAMC. The RO provided the requested notice in June 2012. As for the VA medical records, the RO obtained records from the Tampa and St. Cloud VAMCs, and received a reply from the Palo Alto VAMC stating that there were no records pertaining to the Veteran. Thus, the Board finds that no further duty to assist in obtaining any additional VA medical records is required to comply with the May 2012 remand. Dyment v. West, 13 Vet. App. 141, 146-47 (1999). The appellant has suffered no prejudice that would warrant a remand, and his procedural rights have not been abridged. Bernard v. Brown, 4 Vet. App. 384 (1993). The Board will proceed with the adjudication of this appeal.

Factual background and analysis: Entitlement to service connection for diabetes mellitus, Type II, to include as a result of in-service exposure to tactical chemical herbicides.

Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (finding that the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show. The Veteran should not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. Timberlake v. Gober, 14 Vet. App. 122 (2000) (holding that the law requires only that the Board address its reasons for rejecting evidence favorable to the claimant). 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2014). That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b) (2014). Service connection may be also granted for any disease diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2014).

Service connection for certain chronic diseases, including diabetes mellitus, will be presumed if they are manifest to a compensable degree within one year following the date of separation from active service. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2014).

Service connection for specific diseases, including Type II diabetes mellitus, may be presumed if a veteran served within the actual territorial confines of the Republic of Vietnam (i.e., "foot-on-land" service) during the Vietnam War Era. 38 U.S.C.A. § 1116 (West 2014); 38 C.F.R. §§ 3.307, 3.309(e) (2014). Moreover, veterans who served on active duty within the actual territorial confines of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(a)(6)(iii) (2014). 

Qualifying service within the territorial confines of the Republic of Vietnam includes service on its inland waterways (i.e., "brown water" service), but does not include service on a deep-water naval vessel in the ocean waters offshore under 38 C.F.R. § 3.307(a)(6)(iii) (2014). See Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008); 66 Fed. Reg. 23, 166 (May 8, 2001); VAOPGCPREC 27-97 (1997). Since the issuance of the above General Counsel opinion, VA has reiterated its position that service aboard deep-water naval vessels (i.e., "blue water" service) operating coastally or offshore from Vietnam, as opposed to service aboard vessels operating on the inland waterways of Vietnam ("brown water" service), is not included as "service in the Republic of Vietnam" for purposes of presumptive service connection for Agent Orange-related diseases listed in 38 C.F.R. § 3.309(e) (2014). See Comments section in Federal Register announcement of final rule adding diabetes to list of Agent Orange presumptive diseases, 66 Fed. Reg. 23,166. 

Establishing service connection requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the current disability and the in-service disease or injury. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

Here, the Veteran contends that he was exposed to Agent Orange while serving aboard the American naval vessel USS Paricutin (AE-18) offshore Vietnam. The official United States Navy registry of ships identifies this vessel as an ammunition supply ship that operated with its assigned fleet, the Seventh Fleet, in a supportive role during the Vietnam War, but that it was not one of the vessels officially recognized in the naval historical record as having served on the inland waterways of the Republic of Vietnam, or otherwise had port calls or was docked at harbor in the Republic of Vietnam concurrent with the Veteran's period of active duty from April 1966 to February 1970. The Veteran asserts in his oral hearing testimony and written accounts that his ship, the USS Paricutin, operated in close proximity to the Vietnam shore, only a few miles offshore and close enough for him to hear the sounds of gunfire coming from the land. He claims that he was close enough to have been exposed to Agent Orange that was used on the Vietnamese mainland and also advances the theory that he was exposed to Agent Orange through contaminated rainwater, which he reports drinking and bathing in while serving aboard the USS Paricutin, pursuant to restriction rules and conservation protocols in effect aboard ship regarding potable water use. 
The Board finds the Veteran's accounts of serving aboard a naval vessel operating within visual proximity of the Vietnamese coast and of drinking and bathing in rainwater while serving aboard this ship during this time to be credible. However, the Veteran has not provided any objective evidence, such as cited medical authorities or clinical research studies, to support his otherwise unsubstantiated assertions that he was actually exposed to Agent Orange during his Vietnam War Era military service simply by being aboard an oceangoing vessel that was sailing in close proximity to the coastline of the Republic of Vietnam, or that the natural rainwater that he drank and bathed in while serving aboard said ship was contaminated with Agent Orange, which thusly exposed him to the same. He is furthermore not competent to factually state that such exposure occurred in the manner he describes, as the record does not show that he is a medical or clinical research scientist, or is otherwise a specialist in the field of occupational hazard exposure and safety, much less that he actually conducted chemical analysis of the rainwater he ingested and bathed in during service that demonstrated the presence of Agent Orange contamination. In this regard, the record shows that his academic credentials include a high school diploma, a baccalaureate's degree in accounting, and an associate's degree in psychology and literature, with a vocational history as an auditor, now fully retired, with current part-time employment at a retail department store. His personal and unsubstantiated assertions of in-service exposure to tactical chemical herbicides via the vectors previously described are therefore merely lay assertions of unsubstantiated facts. As such, they are entitled to no probative weight, nor do they trigger any duty on part of VA to refer the case for further evidentiary development to investigate these theories of Agent Orange exposure. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011).

The record fails to show, and the Veteran does not contend, that he had actual in-country "foot-on-land" service in the Republic of Vietnam. His service personnel records show that he served aboard the USS Paricutin from September 1966 to May 1968. As previously indicated, the historical evidence does not show that this ship ever came to port or had members of its crew disembark onto the shores of Vietnam. The Veteran himself has specifically denied any in-country service. At his September 2010 hearing before the Board, he testified that "[w]e were never docked in Vietnam. We were off the coast, where we could see land from the ship . . . but we never docked in Vietnam itself." See September 7, 2010 videoconference hearing transcript.

The record also fails to show, and the Veteran does not contend, that he had service on the inland waterways of Vietnam. In his May 2009 notice of disagreement, the Veteran essentially acknowledged that he had only blue water service. 

Given the above facts, the Board finds that the Veteran did not have the requisite in-country service in the Republic of Vietnam or service on the inland waterways of Vietnam to be entitled to the presumption that he was exposed to a tactical herbicide agent during active service. 38 C.F.R. § 3.307(a)(6)(iii) (2014); Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008). 

There is otherwise no competent historical evidence showing that the Veteran was exposed to Agent Orange during service. The National Personnel Records Center (NPRC) reported having no record indicating that the Veteran was exposed to tactical chemical herbicides during his military service. In November 2006, the NPRC reported that it could not determine whether the Veteran had in-country service in Vietnam although he served aboard the USS Paricutin (AE-18), which was in the official coastal waters of the Republic of Vietnam on many occasions during the period from September 1966 through May 1968. In this regard, the Board reiterates that the Veteran himself has denied leaving his ship to step onto the land mass of Vietnam. 

In May 2009, the United States Army and Joint Services Records Research Center (JSRRC) reported that, after reviewing numerous official military documents, ships histories, deck logs, and other sources of information related to Navy and Coast Guard ships and the use of tactical herbicide agents, such as Agent Orange, during the Vietnam Era, it found no evidence indicating that Navy or Coast Guard ships transported tactical herbicides from the United States to the Republic of Vietnam or that ships operating off the coast of Vietnam used, stored, tested, or transported tactical herbicides. Additionally, the JSRRC could not document or verify that a shipboard veteran was exposed to tactical herbicides based on contact with aircraft that flew over Vietnam or equipment that was used in Vietnam. 

In an April 2012 independent medical evaluation, a private physician, Gary L. Winfield, M.D., noted the Veteran's reported history of showering in rainfall and drinking rainwater in service while his ship was operating on the offshore waters off the coastline of Vietnam. Dr. Winfield found the Veteran to be credible in his account. Based on that history, the physician opined that it is at least as likely as not that the Veteran was in fact exposed to Agent Orange during service, both topically through bathing in rainfall and through ingestion of rainwater. Dr. Winfield's professional credentials appearing on the letter presenting the above opinion show that he is a board-certified physician in family practice. The Board has considered this opinion and finds it of scant probative value towards supporting the factual assertion that the Veteran was exposed to Agent Orange from drinking and bathing in rainwater while serving aboard an ocean vessel sailing offshore from Vietnam. The Board arrives at this conclusion because Dr. Winfield lacks the credentials to support his opinion, as his medical specialty is in family practice and not in clinical research. He furthermore does not present any citation to medical or research authority to support his opinion that rainwater falling into the ocean proximate to the Vietnamese coast during the Vietnam War Era was contaminated with Agent Orange. As such, the Board finds that Dr. Winfield's April 2012 medical statement is not a probative nexus opinion but is merely an unsupported conclusion based on no objectively established facts. Therefore, it is vested with little probative weight and is insufficient to provide a basis with which to allow the Veteran's claim for service connection for diabetes due to Agent Orange exposure. 

The Board has also considered the October 2014 opinion of a VA physician who treated the Veteran on this date and presented the following statement: 

[I have diagnosed the Veteran with] diabetes mellitus[.] He tells me today that he believes that he had significant Agent Orange exposure, both topically and by ingestion of contaminated rain water while serving off the coast of Vietnam in the late 1960s. Agent Orange is a known risk factor for diabetes, so if this is the case, it is more likely than not that his diabetes is associated with Agent Orange exposure.

The Board finds that this opinion is also of very limited probative value towards supporting the Veteran's claim. A careful reading of the language of the opinion shows that it is entirely predicated on the Veteran's asserted factual premise that he was exposed to Agent Orange through topical exposure and ingestion of contaminated rainwater while stationed off the coast of Vietnam. As previously discussed, the Board has rejected the veracity of this factual assertion as the Veteran is not competent to present it on his own authority, nor has he otherwise substantiated it through citation to any objective clinical study. 

The Board finds that the Veteran has not provided affirmative evidence that he was, in fact, exposed to Agent Orange in service. In addition to the evidence previously noted, the Board observes that, although the Institute of Medicine (IOM) found several plausible ways by which blue water Navy veterans could have been exposed to tactical chemical herbicides, the IOM concluded that there was not enough information on the concentrations of Agent Orange in the Vietnamese environment to determine whether blue water Navy veterans were or were not exposed to Agent Orange via ingestion, dermal contact, or inhalation of potable water. Blue Water Navy Vietnam Veterans and Agent Orange Exposure, Institute of Medicine (May 20, 2011). .

Given the above, the Board finds that the Veteran was not exposed to Agent Orange during active service. Thus, service connection for Type II diabetes mellitus is not warranted on a presumptive basis based on Agent Orange exposure. 

Notwithstanding the foregoing, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has determined that the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub. L. No. 98-542, § 5, 98 Stat. 2724, 2727-29 (1984), does not preclude a veteran from establishing service connection with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). The Court held that the provisions of Combee are applicable in cases involving Agent Orange exposure. McCartt v. West, 12 Vet. App. 164, 167 (1999). 
In this case, the Veteran's service treatment records are negative for any diagnosis, or finding, of diabetes or elevated sugar readings in his blood or urine. Thus, the Board finds that the Veteran's Type II diabetes mellitus did not have its onset during active service.

Post-service medical records include a January 2000 VA treatment note, which reflects a history of diabetes and an assessment of non-insulin-dependent diabetes. The VA treatment notes also indicate an earlier finding of diabetes through urinalysis reports showing a high glucose level in October 1999. At a June 2009 VA medical examination, the Veteran reported a history of diabetes which he felt was secondary to Agent Orange exposure. (The Veteran expressed his belief that he was exposed to Agent Orange because he was stationed very near to the land mass of Vietnam.) The June 2009 report indicates that the Veteran's diabetes was first diagnosed in 1998. 

The above evidence shows that the Veteran was diagnosed with diabetes in the mid-to-late 1990s. The report of the June 2009 VA comprehensive physical examination shows that his diabetes was first diagnosed in 1998, which is approximately 28 years after discharge from active naval service. As previously noted, the Veteran testified that he was initially diagnosed with diabetes in 1996. Even accepting this as the time of initial diagnosis, this would still place the date of onset of diabetes to no earlier than 26 years after discharge from service. The passage of so many years between discharge from active service and the objective documentation of a claimed disability is a factor that weighs against a claim for service connection. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). In any event, the Board finds that the Veteran's Type II diabetes mellitus did not have its onset within one year following his separation from naval service in February 1970, such that it could be presumed to have been incurred in active duty under 38 C.F.R. §§ 3.307, 3.309 (2014). 

The Board also finds that continuity of symptomatology associated with the Veteran's diabetes has not been objectively demonstrated. As previously noted, the service treatment records do not show any elevated sugar readings in the Veteran's blood and urine, and he has furthermore conceded that he was not diagnosed with diabetes until 1996, and the medical evidence of record does not demonstrated a clinical diagnosis of diabetes until 1998. This expansive period without pertinent diabetic complaints or treatment is evidence that there has not been a continuity of symptomatology, and weighs heavily against this claim. See Mense v. Derwinski, 1 Vet. App. 354, 356 (1991) (holding that VA did not err in denying service connection when the veteran failed to provide evidence which demonstrated continuity of symptomatology, and failed to account for the lengthy time period for which there is no clinical documentation of his claimed disease or disorder). 

Moreover, there is no probative medical evidence of record linking the Veteran's current diabetes to military service. As discussed earlier, while the Board acknowledges Dr. Winfield's April 2012 opinion and the October 2014 VA physician's opinion that both state, in essence, that it is at least as likely as not that the Veteran's diabetes is related to Agent Orange exposure via contaminated rainfall in service, these opinions were based on an unsubstantiated factual premise, the veracity of which the Board has rejected as finder of fact. As determined above, the Veteran was not exposed to Agent Orange during active service. Thusly, these aforementioned opinions are of no probative value. See Reonal v. Brown, 5 Vet. App. 458 (1993).

Given the above, the Board finds that the Veteran's Type II diabetes mellitus is not related to his period of active naval service. In reaching this decision, the Board notes the Veteran's assertion that his currently diagnosed diabetes is related to his military service, to include Agent Orange exposure. The Board notes that the Veteran is competent to give evidence about personally observable symptoms, such as joint pain. Layno v. Brown, 6 Vet. App. 465 (1994). The Board also notes that a layperson may speak as to etiology in some limited circumstances in which nexus is obvious merely through lay observation, such as a fall leading to a broken leg bone. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In this case, however, the Veteran has dated the onset of his diabetes to a time that occurred well after his separation from active service, and the question of causation extends beyond an immediately observable cause-and-effect relationship. As such, he is not competent to address etiology. 

In conclusion, service connection for Type II diabetes mellitus, to include as secondary to in-service exposure to tactical chemical herbicides, is not warranted. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for Type II diabetes mellitus, to include as secondary to in-service exposure to herbicides, is denied.



____________________________________________
THERESA M. CATINO
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs